IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNDERHILL INVESTMENT CORPORATION and STEPHEN D. PESKOFF, | : : : : |
| Plaintiff | : : |
| | : Civil Action No. _____ |
| v. | : : |
| FIXED INCOME DISCOUNT ADVISORY COMPANY, | : : : |
| Defendant | |

## COMPLAINT

### NATURE OF ACTION

1. Plaintiffs Underhill Investment Corporation ("Underhill"), and Stephen D. Peskoff ("Peskoff") bring this action against Defendant Fixed Income Discount Advisory Company ("FIDAC" or "Defendant") for Defendant's repudiation of a contract with Plaintiffs and its failure and refusal to pay the ongoing fees due Plaintiffs. The sums due to Plaintiffs are expected to approximate $10,000,000 to $17,000,000 or more over the next ten (10) years.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because defendant is a resident of this district.

### BACKGROUND

4. Underhill, at all times relevant to this litigation, was an Ohio corporation with its principal place of business in McLean, Virginia 22102. Until its voluntary dissolution on

1

November 1, 2004, Underhill was in the business of providing business and financial consulting services to private and publicly held businesses.

5. Peskoff is an adult individual and a citizen of Virginia. Peskoff was the president, sole director and sole shareholder of Underhill. Peskoff is the successor in interest to Underhill.

6. FIDAC is a Delaware corporation with its principal place of business at 1211 Avenue of the Americas, 29th Floor, New York, New York 10036. Its President and Chief Executive Officer is Michael A.J. Farrell ("Farrell") and its Vice-President is Ronald D. Kazel ("Kazel"). FIDAC is a fee-based capital management business. FIDAC may be served with process at the offices of its registered agent in the State of Delaware, United Corporate Services, Inc., 874 Walker Road, Suite C, Dover, DE 19904.

7. In early 2004, FIDAC was purchased by Annaly Mortgage Management, Inc. ("Annaly") and remains a wholly owned subsidiary of Annaly. Farrell, according to Securities and Exchange Commission filings, owns 2.1 million shares of Annaly's common stock and in 2004 earned compensation of $4.5 million. Annaly's stock trades on the New York Stock Exchange under the symbol "NLY."

8. FIDAC and Underhill entered into a Consulting Agreement dated February 15, 2000 (the "Agreement"), which was drafted by FIDAC.

9. A true and correct copy of the Agreement is attached hereto as Exhibit A.

10. The language of the Agreement and the parties' course of dealing demonstrate the parties' joint intent that Underhill was to receive ten percent (10%) of the revenues received by FIDAC which resulted from Underhill's efforts to find or facilitate business for FIDAC.

11. Paragraph 3 of the Agreement specifies that either party may terminate the Agreement by written notice to the other, "provided, however, that neither party shall terminate this Agreement without written consent of the other party so long as any of the account agreements resulting from Underhill's services remain in effect."

12. Underhill has never consented, orally or in writing, to terminate the Agreement.

13. Underhill introductions were the cause of FIDAC's relationships with (i) a Friedman, Billings, Ramsey affiliated Real Estate Investment Trust ("FBR REIT"), (ii) Gen Advisors LLC, and (iii) Sentry Select.

14. FIDAC recognized that under the Agreement it had an obligation to pay Underhill 10% of all revenues received from its business relationship with the FBR REIT. Acting pursuant to the Agreement, FIDAC made 10 payments to Underhill between May 2000 and May 2002, with each payment representing 10% of the revenues received by FIDAC from its business relationship with the FBR REIT.

15. With Gen Advisors, FIDAC created Premier, an investment vehicle for banks, life insurance companies and other institutional investors for which FIDAC continues to receive revenues for providing asset management services.

16. During the discussions that led directly to the launching of Premier, Gen Advisors raised the question of how and to what extent it should compensate Underhill for its services in putting the parties together. FIDAC, specifically Farrell, represented to Gen Advisors, Peskoff and Underhill that FIDAC would compensate Underhill pursuant to an agreement already in place between Underhill and FIDAC. In justifiable reliance on FIDAC's

representation, and its Agreement with FIDAC, Underhill and Peskoff did not pursue further compensation for itself from Gen Advisors.

17. In or about July of 2003, Underhill provided services to FIDAC that resulted in a business relationship between FIDAC and Sentry Select. With Sentry Select, FIDAC created MBS Trusts I, II, III and IV which gave FIDAC entry into the Canadian market for asset management services and for which FIDAC continues to receive revenues for providing services.

18. Without the services of Underhill, FIDAC would not have established business relationships with either Gen Advisors or Sentry Select.

19. On December 22, 2003, in preparation for its merger with Annaly, and, upon information and belief, in an effort to avoid having to disclose to Annaly its contractual relationship with, and substantial ongoing financial obligations to, Underhill, FIDAC sent Underhill a check for $30,000, representing 10% of the $300,000 revenue it anticipated it would receive for its first year from its business relationship with Sentry Select and its investment vehicle, MBS Trust I.

20. Other than this initial payment, however, FIDAC has not paid Underhill anything with respect to the other substantial revenues FIDAC has received from its ongoing business relationship with Sentry Select and its investment vehicles, MBS Trusts I, II, III and IV.

21. Furthermore, without justification or excuse, FIDAC has never paid Underhill anything with respect to its business relationship and Gen Advisors, despite collecting millions of dollars in revenue from the Premier fund Gen Advisors and FIDAC launched as a result of that business relationship.

22. In a letter to Underhill dated April 20, 2004, FIDAC informed Underhill that it would not make any further payments to Underhill.

23. FIDAC's repudiation specifically contravened Section 3 of the Agreement, which bars unilateral termination "so long as any of the Account Agreements remain in effect."

24. The Premier and MBS Trusts (I, II, III and IV) accounts, each derived from the business relationship between FIDAC and both Gen Advisors and Sentry Select, were fully in effect on April 20, 2004, and remain in effect at this time.

25. A true and correct copy of the April 20, 2004 letter from FIDAC to Underhill is attached hereto as Exhibit B.

26. FIDAC is currently receiving approximately $10,800,000 per year in revenues from the business relationships procured by Underhill with Gen Advisors and Sentry Select (through the investment vehicles of Premier and the MBS Trusts), and these revenues are increasing each year. Plaintiff cannot determine its exact entitlements without a full current and annual accounting of FIDAC's revenues.

## COUNT I – BREACH OF CONTRACT

27. Paragraphs 1-26 above are hereby incorporated by reference.

28. The Agreement is a valid and binding contract.

29. Under the Agreement, FIDAC is required to pay Underhill and/or Peskoff 10% of revenues it receives as a result of introductions of FIDAC by Underhill.

30. FIDAC has breached the Agreement by failing and refusing to pay Underhill or Peskoff 10% of all revenues it has received as a result of its management of the Premier and MBS Trust I, II, III and IV funds, which resulted from Underhill introductions.

31. Underhill has sustained damages as a result of FIDAC's breach of the Agreement in an amount to be determined at trial.

WHEREFORE, Underhill and Peskoff respectfully request that the Court enter judgment in their favor and against FIDAC in an amount to be determined at trial, together with

an award of costs, including reasonable attorneys' fees incurred in connection with this action, interest, and such other relief as the Court deems appropriate.

## COUNT II – PROMISSORY ESTOPPEL

32. Paragraphs 1-26 above are hereby incorporated by reference.

33. Defendant represented to Gen Advisors and Underhill that it would compensate Underhill under the Agreement for the introduction of FIDAC to Gen Advisors.

34. Underhill justifiably relied on this promise to its detriment and did not to pursue other compensation from Gen Advisors.

WHEREFORE, Underhill and Peskoff respectfully request that the Court enter judgment in their favor and against FIDAC in an amount to be determined at trial, together with an award of costs, including reasonable attorneys' fees incurred in connection with this action, interest, and such other relief as the Court deems appropriate.

## COUNT III - QUANTUM MERUIT

35. Paragraphs 1-26 above are hereby incorporated by reference.

36. In the alternative, and to the extent the acts and omissions of FIDAC of which Underhill now complains are deemed to be outside the express and implied terms of the Agreement, FIDAC has been unjustly enriched through its failure to pay Underhill or Peskoff the fair value of their services.

37. Underhill and Peskoff provided services to FIDAC with the expectation that they would be paid for the services in accordance with the Agreement, discussions between the parties, and industry custom. Underhill and Peskoff did not provide these services to FIDAC as a gratuity.

38. FIDAC has received the full benefit of Underhill's and Peskoff's services without paying Underhill or Peskoff.

6

SL1 589928v3/100409.00001

39. FIDAC will be unjustly enriched and Underhill and Peskoff will be unfairly deprived of the value of their services if FIDAC is not required to pay Underhill and/or Peskoff the fair value of their services.

40. An injustice can only be avoided by a Court order requiring FIDAC to pay Underhill or Peskoff the fair value of their services.

WHEREFORE, Underhill and Peskoff respectfully request this Court to enter judgment in their favor and against FIDAC in an amount to be determined at trial, together with an award of costs, including reasonable attorneys' fees incurred in connection with this action interest, and such other relief as the Court deems equitable and just.

## COUNT IV – DECLARATORY JUDGMENT

41. Paragraphs 1-26 above are hereby incorporated by reference.

42. For the reasons stated above, Underhill and/or Peskoff are entitled to receive 10% of the revenues received by FIDAC from the Premier and MBS Trust I, II, III and IV funds. Theses funds and FIDAC's receipt of revenues therefrom are ongoing and are expected to continue for years.

43. Underhill and Peskoff aver they are entitled to the present value of the expected revenues, as established at trial, in a lump sum. In the alternative, Underhill and Peskoff aver they are entitled to 10% of the revenues received by FIDAC as result of these funds as the revenues are received by FIDAC.

44. FIDAC contends that Underhill and Peskoff are not entitled to any additional revenues received by FIDAC as result of the Premier and MBS I, II, III and IV Trust funds.

45. Thus, there is an actual controversy regarding FIDAC's obligations to make payments to Underhill and/or Peskoff.

WHEREFORE, in the event the Court determines Underhill and/or Peskoff are not entitled to a lump sum payment of projected fees they are entitled to receive resulting from future revenues to FIDAC, but rather should receive its fees as and when FIDAC receives the corresponding revenues, Underhill and Peskoff respectfully request this Court to enter judgment in their favor and against FIDAC:

(a) Requiring annual accountings performed by an independent auditor at FIDAC's expense to determine the revenues received by FIDAC as a result of the Premier, MBS Trust I, II, III and IV funds;

(b) Preventing FIDAC from manipulating its business so as to avoid payments to Underhill and Peskoff;

(c) Requiring FIDAC to pay to Underhill and/or Peskoff 10% of the revenues received by FIDAC as the result of the Premier and MBS Trust I, II, III and IV funds, as determined by the accounting, within ten (10) business days within the completion of each accounting;

(d) Awarding Underhill and/or Peskoff interest and costs, including reasonable attorneys' fees incurred in connection with this action; and

(e) Such other relief as the Court deems equitable and just.

Dated: February 13, 2006        STEVENS & LEE, P.C.

By: _____
Joseph Grey (De. Bar # 2358)
1105 North Market Street
Seventh Floor
Wilmington, DE 19801
TEL: (302) 654-5180
FAX: (302) 654-5181
EMAIL: jg@stevenslee.com

OF COUNSEL:

RUBEN & ARONSON, LLP

Robert L. Ruben (DC Bar #414580)
Marshall F. Berman (DC Bar #020743)
4800 Montgomery Lane, Suite 150
Bethesda, MD 20814
TEL: (301) 951-9696
FAX: (301) 951-9636
EMAIL: rruben@randalaw.com

# EXHIBIT A

# FIDAC
*Fixed Income Discount Advisory Company*



February 15, 2000

Mr. Steve Peskoff
Underhill Investment Corp.
7414 Old Maple Square
McLean, VA 22102

Re:  Consulting Engagement

Dear Mr. Peskoff:

This letter will confirm our engagement regarding the provision of consulting services by Underhill Investment Corp. ("Underhill") to Fixed Income Discount Advisory Company ("FIDAC").

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Underhill and FIDAC agree as follows:

1. **Consulting Services**. Underhill shall provide FIDAC with such consulting services as they shall agree from time to time, and the assets managed by FIDAC for those clients (the "Accounts").

2. **Compensation**. FIDAC shall pay to Underhill a fee equal to per annum of the fees paid by the Accounts, payable by FIDAC to Underhill monthly and calculated in accordance with the formula described in the (the "Accounts Agreements").

3. **Term; Termination**. Unless earlier terminated in ordinance with this paragraph, this Agreement shall be for an initial term of one year, commencing on February 15, 2000, and ending on February 15, 2001. Upon expiration of the initial term, and provided that neither party shall be in default hereunder, this Agreement shall be automatically renewed under the same terms and conditions for successive one-year terms, each expires and ending on the same date one year later. Either Underhill or FIDAC may terminate this Agreement by delivering written notice to the other party; provided, however, that neither party shall terminate this Agreement without written consent of the other party so long as any of the Account Agreements remain in effect.

4. **Notices**. Unless otherwise directed, all communications or notices required or permitted hereunder will be directed to Underhill at the address set forth above. Likewise, if you wish to communicate with us or serve any notice required or permitted under this Agreement, please contact us at:

   Fixed Income Discount Advisory Company
   12 E. 41st Street
   Suite 700
   New York, NY 11021

5. **Assignability**. Our relationship is a personal one and cannot be assigned, sold or in any manner hypothecated or pledged by either of us without the written consent of the other party. No merger, sale, or consolidation will effect the transfer of this Agreement.

6. **Amendment**. This Agreement may be amended only by a writing executed by both parties.

7. **Binding Affect**. This Agreement shall be binding upon, and shall insure the benefit of, the parties hereto and their respective heirs, successors, and assigns.

8. **Governing Law**. This Agreement is governed by and will be construed in accordance with the laws of the State of Delaware.

9. **Independent Contractor**. Underhill is and shall hereafter be an independent contractor vis-à-vis FIDAC, and nothing herein may be interpreted or construed so as to create any employment, partnership, joint venture, or other relationship, between Underhill and FIDAC or their respective employees, representatives and agents.

10. **Best Efforts; Liability**. Underhill shall exercise its best efforts and judgement in the performance of its duties hereunder. Neither Underhill nor its owners, officers, directors, or employees, shall incur, any liability in connection with the performance of such duties, and obligations, except, in the case of bad faith, willful misfeasance and gross negligence.

If the foregoing accurately states our agreement, please signify your acceptance by signing and dating below where indicated.

Very truly yours,

FIXED INCOME DISCOUNT
ADVISORY COMPANY

By _____
Michael A. J. Farrell, Chairman

ACCEPTED AND AGREED
To as of the February 15, 2000

Underhill Investment Corp.

_Stephen D. Peskoff_ President
Steve Peskoff

# EXHIBIT B

SL1 113271v1/099999.09999

# FIDAC

*Fixed Income Discount Advisory Company*



April 20, 2004

Mr. Steve Peskoff
Underhill Investment Corporation
1660 International Drive
Suite 400
McLean, VA 22102

Dear Steve:

I received your letter dated as of the 12th of this month and wanted to respond to you in a timely manner.

During the last two years FIDAC has successfully grown its business through the launch of five different investment vehicles which are marketed in China, Japan, Latin America, Canada (MBS Trust) and the US life insurance market (Premier). The latter two of which you provided the initial introduction to the principals involved in their formation. Although I understand that you have a personal relationship with Mr. Baptista, you should realize that not only is the information he provided you incorrect, but it is in direct violation of the terms of the Confidentiality Agreement entered into between us and his organization. Based upon the extensive development time and costs involved for launching Premier, and the nominal level of assets currently in the fund, we have yet to see a positive return on our investment. While we have a dedicated team of investment professionals involved in the daily management of the fund who are responsible for its above market returns, we are dedicating limited resources to the further marketing of this product.

On numerous prior occasions Mike has mentioned to you that the least successful of products we launched in the past two years have been MBS Trust and Premier. Nonetheless, Mike discussed with you in December 2003 that he would compensate you for your limited involvement in these products and a check was issued to you on December 22, and cashed by you, for $30,000. It was also explicitly explained that there would be no further consideration paid to you and this letter serves as a further reiteration of that position.

Regards,

*[signature]*

Ronald D. Kazel

1211 Avenue of the Americas • 29th Floor • New York, NY 10036 • 1-800-487-9947 • Tel: 212-696-0100 • Fax: 212-696-9809

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS OF THE FORM.)

## I. (a) PLAINTIFFS
Underhill Investment Corporation

## DEFENDANTS
Fixed Income Discount Advisory Company

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ___N/A___
(EXCEPT IN U.S. PLAINTIFF CASES)
CANADIAN RESIDENT

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT ___KENT___
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Joseph Grey, Esquire
Stevens & Lee, P.C.
1105 North Market Street, Seventh Floor
Wilmington, DE  19801
(302)-654-5180

ATTORNEYS (IF KNOWN)
Not Known

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties In Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal place of Business in This State | ☐ 4 | ☒ 4 |
| Citizens of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury - Product Liability | | | ☐ 450 Commerce/CC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| | | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 151 Medicare Act | ☐ 330 Federal Employer's Liability | | ☐ 650 Airline Regs. | ☐ 830 Patent | |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| | | ☐ 371 Truth in Lending | | | |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| | | | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 160 Stockholder's Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | | | ☐ 893 Environmental Matters |
| ☒ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| | | | | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access of Justice |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **HABEAS CORPUS:** ☐ 530 General ☐ 535 Death Penalty | | | |
| ☐ 240 Torts to Land | ☐ 440 Other Civil Rights | | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | |
| ☐ 245 Tort Product Liability | | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act | | |

## V. ORIGIN  (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION  (CITE THE U.S. CIVIL STATUTE UNDER WHICH ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. __06 - 99__

# ACKNOWLEDGMENT OF RECEIPT FOR AO FORM 85

## *NOTICE OF AVAILABILITY OF A UNITED STATES MAGISTRATE JUDGE TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF __1__ COPIES OF AO FORM 85.

__2-14-06__
(Date forms issued)

__/s/ Robert Testa__
(Signature of Party or their Representative)

__Robert Testa__
(Printed name of Party or their Representative)

Note: Completed receipt will be filed in the Civil Action