IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

UNDERHILL INVESTMENT     :
CORPORATION, *by and through*    :
*Stephen D. Peskoff as successor in*  :
*interest*, and STEPHEN D. PESKOFF,  :
*individually*,                      :    Civil Action No. 06-0099-SLR
               Plaintiffs   :
                             :
     v.                        :    **CONFIDENTIAL INFORMATION**
                             :    **SUBJECT TO PROTECTIVE ORDER**
FIXED INCOME DISCOUNT      :    **FILED UNDER SEAL**
ADVISORY COMPANY,          :
            Defendant.   :    **This document is not to be opened or its**
                           :    **contents displayed, copied, or revealed except**
                           :    **by Court Order or by agreement of the parties**
                           :    **to this action.**

## ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Dated: June 26, 2007             STEVENS & LEE, P.C.
                             Joseph Grey (DE Bar No. 2358)
                             G. Thompson Bell, III, *pro hac vice*
                             Todd J. Cook, *pro hac vice*
                             1105 North Market Street, Seventh Floor
                             Wilmington, DE 19801
                             TEL: (302) 654-5180
                             FAX: (302) 654-5181
                             EMAIL: jg@stevenslee.com
                                      gtb@stevenslee.com
                                      tjc@stevenslee.com

        OF COUNSEL:
                       RUBEN & ARONSON, LLP
                       Robert L. Ruben, *pro hac vice*
                       Marshall F. Berman, *pro hac vice*
                       4800 Montgomery Lane, Suite 150
                       Bethesda, MD 20814
                       TEL: (301) 951-9696
                       FAX: (301) 951-9636
                       EMAIL: rruben@randalaw.com
                       mberman@randalaw.com

                       *Attorneys for Plaintiffs Underhill Investment Corp.*
                       *and Stephen D. Peskoff*

SLI 729777v3/100409.00001

Table of Contents

Page

I. INTRODUCTION ...............................................................................................1

II. STATEMENT OF NATURE AND STATE OF PROCEEDINGS ...........................................2

III. SUMMARY OF ARGUMENT .................................................................................3

IV. DEFENDANT'S MOTION MISCHARACTERIZES THE FACTS .......................................4

    A.   Beginning of FIDAC-Peskoff Consulting Relationship: The FBR
         Transaction ..............................................................................................5

    B.   The Consulting Agreement...............................................................................6

    C.   The Gen Advisors Transaction ..........................................................................9

    D.   The Sentry Select Transaction .........................................................................12

V. QUESTIONS PRESENTED .................................................................................13

VI. ARGUMENT....................................................................................................14

    A.   The Court Should Reject FIDAC's Argument that New York Law
         Governs the Consulting Relationship Between FIDAC and Plaintiffs
         Because the Parties Specifically Agreed Their Relationship Would Be
         Governed by the Substantive Law of the State of Delaware, the State of
         FIDAC's Incorporation. ...............................................................................15

    B.   The Court Should Deny FIDAC's Motion for Summary Judgment on the
         Issue of Statute of Frauds Because Delaware Does Not Have a Statute of
         Frauds Concerning Finder's Fee Agreements and, Even if New York
         Law Applies , the Parties Have a Series of Signed Writings Sufficient to
         Satisfy the Statute of Frauds...........................................................................21

    C.   The Court Should Deny FIDAC's Motion for Summary Judgment on
         Plaintiffs' Quantum Meruit Claim Because the Undisputed Facts
         Establish that Plaintiffs Satisfied All of the Elements of a Claim for
         Quantum Meruit Including that Plaintiffs Rendered Services to FIDAC
         with the Reasonable Expectation that They Would Be Compensated. ...........................24

Table of Contents
(continued)

Page

D.  The Court Should Deny FIDAC's Motion for Summary Judgment
    Because the Undisputed Facts Demonstrate that FIDAC not only
    Promised to Pay Plaintiffs but Also Dissuaded Another Party from
    Paying Plaintiffs for Introducing FIDAC to Gen Advisors with the
    Reasonable Expectation that Plaintiffs Would Rely on the Promise and
    Plaintiffs in Fact Reasonably Relied on the Promise to Their Detriment. ......................29

VII. CONCLUSION ...................................................................................................................31

## TABLE OF AUTHORITIES

CASES

*Athletes and Artists, Inc. v. Millen,*
    1999 WL 587883, No. 96-Civ.-9996 (S.D.N.Y. Aug. 4, 1999).............................................22

*Bazak Intern. Corp. v. Tarrant Apparel Group,*
    378 F. Supp. 2d 377 (S.D.N.Y. 2005)....................................................................................23

*Bellanca Corp. v. Bellanca,*
    169 A.2d 620 (Del. 1961) ..............................................................................................25, 26

*Cheeseman v. Grover,*
    490 A.2d 175 (Del. Super. 1984).............................................................................................21

*Chrysler Corp. v. Chaplake Holdings, Ltd.,*
    822 A.2d 1024 (Del. 2003) ...............................................................................16, 29, 31

*Citrin v. Columbia Broadcasting,*
    29 A.D.2d 740, 286 N.Y.S.2d 706 (N.Y.S. App. Div. 1968) ..................................................28

*Clifford R. Gray, Inc. v. Le Chase Constr. Servs., LLC,*
    819 N.Y.S.2d 182 (N.Y. App. Div. 2006) ................................................ 16, 29-30

*Construction Systems Group, Inc. v. The Council of Sea Colony,*
    1995 WL 622421, No. 449, 1994 (Del. Sept. 28, 1995)..........................................................25

*Davis & Mamber v. Adrienne Vittadini, Inc.,*
    622 N.Y.S.2d 706 (N.Y. App. Div. 1995) ...............................................................................23

*Daystar Sills, Inc. v. Anchor Investments, Inc.,*
    2007 WL 1098129, No. 04L-03-001 (Del. Super. Apr. 12, 2007) .........................................25

*Feinberg v. Saunders, Karp & Megrue, L.P.,*
    1998 U.S. Dist. LEXIS 19144, No. 97-207-SLR (D. Del. Nov. 13, 1998) .......................17, 18

*Finnish Fur Sales Co., Ltd. v. Juliette Shulof Furs, Inc.,*
    770 F. Supp. 139 (S.D.N.Y. 1991) .........................................................................................20

*Flammia v. Mite Corp.,*
    401 F. Supp. 1121 (E.D.N.Y. 1975) ..................................................................................22, 24

*In re Fleming Cos., Inc.,*
    347 B.R. 163 (Bankr. D. Del. 2006).................................................................................17, 18

*Gruppo, Levy & Co. v. ICOM Info. & Communs., Inc.,*
    2004 U.S. Dist. LEXIS 27320, No. 01-Civ.-8922 (S.D.N.Y. Jun. 28, 2004)..........................22

i

*Haft v. Dart Group Corp.*,
    841 F. Supp. 549 (D. Del. 1993) ................................................................................. 18, 19

*Hammersmith v. TIG Ins. Co.*,
    480 F.3d 220 (3d Cir. 2007) ..................................................................................... 15, 16

*Horowitz v. Fed. Kemper Life Assurance Co.*,
    57 F.3d 300 (3d Cir. 1995) ............................................................................................ 15

*Huber v. Taylor*,
    469 F.3d 67 (3d Cir. 2006) ............................................................................................ 15

*Intercontinental Planning, Ltd. v. Daystrom, Inc.*,
    24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969) ......................................... 20

*J-Squared Technologies, Inc. v. Motorola, Inc.*,
    364 F. Supp. 2d 449 (D. Del. 2005) .............................................................................. 18

*Kagan v. K-Tel Entertainment, Inc.*,
    172 A.2d 375, 568 N.Y.S.2d 756 (N.Y.S. App. Div. 1991) .................................... 27, 28

*Klaxon Co. v. Stentor Mfg. Co.*,
    313 U.S. 487 (1941) ...................................................................................................... 17

*La Mar Hosiery Mills, Inc. v. Credit & Commodity Corp.*,
    28 Misc.2d 764, 768, 216 N.Y.S.2d 186, 190 (N.Y. City Ct. 1961) ........................... 23

*Lord v. Souder*,
    748 A.2d 393 (Del. 2000) ................................................................................. 29, 30, 31

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ................................................................................................ 14, 15

*Milton Abelese, Inc. v. Creekstone Farms Premium Beef, LLC*,
    2007 WL 1434990, No. 06-CV-3893 (E.D.N.Y. May 14, 2007) .................................. 27

*Morris Cohon & Co. v. Russell*,
    245 N.E.2d 712 (N.Y. 1969) ........................................................................................ 22

*Muller Boat Works, Inc. v. Unnamed 52' House Barge*,
    464 F. Supp. 2d 127 (E.D.N.Y. 2006) .................................................................... 16, 25

*Nakhleh v. Chem. Construction Corp.*,
    359 F. Supp. 357 (S.D.N.Y. 1973) ......................................................................... 20, 21

*Pa. Coal Ass'n v. Babbitt*,
    63 F.3d 231 (3d Cir. 1995) ............................................................................................ 15

SL1 729777v3/100409.00001

*Prestige Caterers v. Kaufman,*
   290 A.D.2d 295, 736 N.Y.S.2d 335 (N.Y. App. Div. 2002) ....................................26, 27, 28

*Priel v. Heby,*
   2004 WL 1753375, No. 111605/04 (N.Y.S. May 26, 2004) ...............................................27, 28

*Rimmax Wheels LLC v. RC Components, Inc.,*
   477 F. Supp. 2d 670 (D. Del. 2007).................................................................................15, 16

*Rosenfeld v. Zerneck,*
   776 N.Y.S.2d 458 (N.Y. Sup. 2004)......................................................................................23

*State ex rel. Structa-bond, Inc. v. Mumford & Miller Concrete, Inc.,*
   2002 WL 31101938, No. 98C-10-327-JEB (Del. Super. Sept. 17, 2002) ........................16, 25

*Stoltz Realty Co. v. Paul,*
   1995 WL 654152, No. 94C-02-208 (Del. Super. Sept. 20, 1995) ...........................................28

*Stone & Webster, Inc. v. Shaw Group, Inc.,*
   354 B.R. 686 (D. Del. 2006)...................................................................................................17

*Suburban Trust & Savs. Bank v. Univ. of Delaware,*
   910 F. Supp. 1009 (D. Del. 1995).....................................................................................18, 19

*U.S. Fire Ins. Co. v. Am. Home Assurance Co.,*
   796 N.Y.S.2d 603 (N.Y.S. App. Div. 2005).............................................................................28

*Ware v. Ball Plastic Container Corp.,*
   432 F. Supp. 2d 434 (D. Del. 2006)..................................................................................14, 15

*Weiss v. Northwest Broad, Inc.,*
   140 F. Supp. 2d 336 (D. Del. 2001)..................................................................................16, 18

*Williams v. Stone,*
   109 F.3d 890 (3d Cir. 1997)...................................................................................................16

SL1 729777v3/100409.00001

STATUTES, RULES & REGULATIONS

DEL. CODE. ANN. TIT. 6, § 2714 ................................................................................21

FED. R. CIV. P. 56 .......................................................................................................14

N.Y. GEN. OBLIG. LAW § 5-701 ....................................................................20, 22, 23

OTHER AUTHORITIES

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 ...................................16, 17, 18, 19, 20, 21

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 ........................................16, 17, 18, 19, 20

SL1 729777v3/100409.00001

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNDERHILL INVESTMENT CORPORATION, *by and through Stephen D. Peskoff as successor in interest*, and STEPHEN D. PESKOFF, *individually*, | : : : : | |
| Plaintiffs | : : | Civil Action No. 06-0099-SLR |
| v. | : : | **CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER FILED UNDER SEAL** |
| FIXED INCOME DISCOUNT ADVISORY COMPANY, | : : | |
| Defendant. | : : : : | **This document is not to be opened or its contents displayed, copied, or revealed except by Court Order or by agreement of the parties to this action.** |

## ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Underhill Investment Corporation and Stephen D. Peskoff (collectively,

"Peskoff" or "Plaintiffs") file this memorandum of law in opposition to Defendant Fixed Income

Discount Advisory Company's ("FIDAC") motion for summary judgment. Neither the facts of

record nor the applicable law support FIDAC's arguments.

## I. INTRODUCTION

This is a case for recovery of the value of Peskoff's consulting services rendered

to FIDAC under quasi-contract theories of quantum meruit and promissory estoppel. The only

reason Plaintiffs are not suing for breach of an express contract is that the writing signed by the

parties (the "Consulting Agreement"), which was drafted by FIDAC's President, lacks a

sufficiently definitive price term. Nevertheless, acting pursuant to the Consulting Agreement, it

is undisputed that Peskoff delivered extraordinary value to FIDAC in these separate transactions.

FIDAC paid Peskoff the fair value of his services for the first transaction. However, Peskoff has

1

only been paid a small fraction of the market value of his services for the second transaction, and absolutely nothing for the third transaction.

Specifically, Peskoff introduced FIDAC to Sentry Select and Gen Advisors.

# REDACTED

Despite acknowledging that Peskoff made the introductions, despite a course of dealings between FIDAC and Peskoff whereunder Peskoff was paid for a similar introduction (20% of FIDAC's resultant revenues), despite the industry custom and FIDAC's own practice of paying finders such as Peskoff, and despite the fact that FIDAC authored, signed and sent a letter to Peskoff by which FIDAC and Peskoff agreed FIDAC would pay Peskoff for his services, FIDAC has refused to pay Peskoff the reasonable value of his services for making these extremely valuable introductions.

In its opening brief, FIDAC mischaracterizes and ignores the facts and evidence in the record in an effort to support its motion for summary judgment. In arguing that Peskoff's claims are barred by the New York statute of frauds, FIDAC wholly ignores the series of signed writings evidencing the parties' consulting relationship and FIDAC's obligation to pay Peskoff for his services. Incredibly, FIDAC also argues Peskoff cannot make out a quasi-contract claim because Peskoff allegedly did not expect to be paid for his services. The record evidence shows quite clearly that both Peskoff and FIDAC expected that Peskoff would be paid.

## II. STATEMENT OF NATURE AND STATE OF PROCEEDINGS

Plaintiffs have asserted three claims: quantum meruit (Count I), promissory estoppel (Count II) and declaratory judgment (Count III). [See D.I. 31 (Amended Complaint)]. FIDAC has answered the Amended Complaint and the pleadings are closed. [D.I. 36]. Fact

2

discovery closed on December 31, 2006. [D.I. 11 ¶ 2(b)]. Expert discovery was completed in March 2007. Defendant has no expert. In accordance with the stipulated summary judgment briefing schedule [D.I. 43 (stipulation approved by Court on May 2, 2007)], Plaintiffs and Defendant filed cross motions for summary judgment and opening briefs in support of their respective motions on May 29, 2007. [D.I. 45, 47, 50, 51, 54].

## III. SUMMARY OF ARGUMENT

Plaintiffs' quantum meruit and promissory estoppel claims arise from Peskoff's consulting services performed in reliance on the Consulting Agreement drafted by FIDAC's president, Michael Farrell, and executed on or about February 15, 2000, statements (oral and written) made by Mr. Farrell and other representatives of FIDAC that FIDAC would pay Peskoff, and perhaps most important to the promissory estoppel claim, statements by Mr. Farrell dissuading Gen Advisors from paying Peskoff in order to avoid a double payment. FIDAC argues these claims are barred by the New York Statute of Frauds. However, in the Consulting Agreement, the parties agreed that their relationship would be governed by the substantive law of Delaware. [*See* Consulting Agreement ¶ 8]. Delaware' statute of frauds does not apply to finder's fee agreements. Furthermore, even if the Court were to determine that New York law applies, the Consulting Agreement and various other signed writings satisfy the New York Statute of Frauds.

A quantum meruit claim requires that the plaintiff performed services with an expectation that the defendant would pay for them, and that the services were performed under circumstances which should have put the defendant on notice that the performing party expected to be paid by the defendant. FIDAC's only argument in support of summary judgment on Plaintiffs' quantum meruit claim is that Plaintiffs did not expect to be paid for their services. In making this argument, FIDAC misapprehends the case law cited in its own brief and ignores

3

substantial undisputed evidence that Plaintiffs expected to be paid for their services. In fact, FIDAC's President admitted during his deposition that he knew Peskoff expected to be compensated.

Finally, a promissory estoppel claim requires that (i) the defendant made a promise (ii) with the reasonable expectation that its promise will induce action or forbearance, (iii) the plaintiff detrimentally relied on the promise, and (iv) injustice can be avoided only by enforcement of the promise. The undisputed facts demonstrate FIDAC made numerous promises to pay Peskoff and expressly warned Gen Advisors not to pay Peskoff for the same services in order to avoid a double payment. As was expected, Peskoff reasonably relied to his detriment on FIDAC's promises. Under the circumstances, injustice can be avoided only if this Court enforces FIDAC's promises.

## IV. DEFENDANT'S MOTION MISCHARACTERIZES THE FACTS

In the "Statement of Facts" section of its opening brief, FIDAC goes to great lengths to mischaracterize the testimony and evidence in the record in an effort to make the fully executed Consulting Agreement, drafted by FIDAC's President and agreed to by Peskoff, appear irrelevant to Peskoff's claims. FIDAC's sophistry, however, cannot change the fact that the Consulting Agreement was (i) a writing, (ii) executed by the parties, (iii) open-ended to apply to all "accounts" generated by Peskoff's services, (iv) never terminated and (v) actually relied upon by Peskoff in connection with the services he rendered to FIDAC. Neither can it change the fact FIDAC itself understood Peskoff did not render his services gratuitously, but expected to be compensated appropriately.

Simply put, the undisputed facts demonstrate the Consulting Agreement is fundamental to Peskoff's claims. In fact, the only reason Peskoff is not proceeding on a claim for breach of the Consulting Agreement is that FIDAC's President, who drafted the agreement,

4

failed to provide a sufficiently definitive price term. Peskoff's services cannot be viewed

separately from the Consulting Agreement wherein FIDAC promised to pay Peskoff an

undisclosed percentage of FIDAC's management fees for the life of the "accounts" Peskoff

generated.

### A.  Beginning of FIDAC-Peskoff Consulting Relationship: The FBR Transaction

FIDAC is a money manager. [*See* Exhibit "1" at 69:12-13 (excerpts of the

Deposition of Michael A.J. Farrell, December 15, 2007) (explaining FIDAC's business and

testifying "We manage accounts.  We manage direct capital.  That's what we do.") (hereinafter

Exhibit "1" will be cited as "Farrell Dep.")].[1]  Peskoff is, among other things, an independent

consultant operating in the financial services and investment banking industries.  Underhill was a

corporation wholly-owned by Peskoff through which Peskoff provided his consulting services.

Prior to the transactions giving rise to the instant claims, Peskoff had a personal and business

relationship with Mike Farrell ("Farrell"), who is, and since founding the company in 1994 has

been, the President, Chief Executive Officer and Chairman of the board of directors of FIDAC.

[Farrell Dep. at 5, 8, 11-12].  Peskoff and Farrell first met and worked together in the 1990s

when Peskoff, working as a consultant for Friedman, Billings, Ramsey & Company ("FBR"),

helped Farrell raise capital for and eventually take public Farrell's other company, Annaly

Capital Management, Inc. (f/k/a Annaly Mortgage Management, Inc.).  [*See* Farrell Dep. at 6-8].

FBR had a real estate investment trust (the "FBR REIT") that prior to 2000 was

managed by another money manager, Blackrock, Inc.  [*See* Exhibit "2" at 73-74 (excerpts of the

Deposition of Stephen D. Peskoff, October 10, 2006 and December 12, 2006) (hereinafter

Exhibit "2" will be cited as "Peskoff Dep.")].  In 1999 or early 2000, Peskoff helped bring

---

[1] Unless otherwise noted, all references to exhibits are to the Certification of Counsel regarding Exhibits to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment filed concurrently herewith.

FIDAC together with FBR and transition the management of the FBR REIT from Blackrock to FIDAC. FIDAC took over the management of the FBR REIT in or about May 2000. [Peskoff Dep. at 73-75; Farrell Dep. at 22:7-17].

### B. The Consulting Agreement

FIDAC recognized it had an obligation to pay Peskoff for his services. Indeed, in its opening brief, FIDAC acknowledges that payment of finder's fees is "customary in the industry." [D.I. 51 at 2; *see also id.* at 5 (acknowledging that the customary finder's fee is a percentage of the management fees generated from the accounts)]. Therefore, Farrell told Peskoff he would draft and send him a contract providing for payment "reasonable and consistent with what was done in that business." [Peskoff Dep. at 77]. However, rather than sending a contract limited to the FBR transaction, Farrell drafted and sent to Peskoff at Underhill's office in McLean, Virginia, an open-ended agreement to govern the consulting relationship between Peskoff and FIDAC going forward. [*See* Exhibit "3" (hereinafter cited as the "Consulting Agreement"); *see also* Peskoff Dep. 75:18-76:3]. In fact, the Consulting Agreement does not refer whatsoever to either FBR or the FBR REIT, which was at the time the only account Peskoff had helped generate for FIDAC. [*See generally* Consulting Agreement]. Indeed, FIDAC has confirmed that the Consulting Agreement is "not specific to FBR, that's correct, because it doesn't make any reference to FBR." [Exhibit "4" at 103 (excerpts of the Deposition of Ronald D. Kazel, December 14, 2006) (hereinafter Exhibit "4" will be cited as "Kazel Dep."]. Rather, the Consulting Agreement provides generally that "FIDAC shall pay to Underhill a fee equal to per annum of the fees paid by the *Accounts*, payable by FIDAC to Underhill monthly." [Consulting Agreement ¶ 2 (emphasis added); *see also* Farrell Dep. at 16:20-22 (testifying that Farrell "gave [Peskoff] something in writing to cover payments that might be made from time to time")].

6

Pursuant to the Consulting Agreement, FIDAC paid Underhill twenty percent (20%) of the management fees received by FIDAC from its business relationship with the FBR REIT. [*See* Exhibit "5"; Farrell Dep. at 16:14-17:4]. These payments were made between May 2000 and May 2002, or the entire life of FIDAC's management of the FBR REIT. [*See* Exhibit "5"]. During this time (specifically in late 2001 and mid-2002), Peskoff made two more introductions: Ernie Baptista of Gen Advisors and Raniero Corsini of Sentry Select. Both resulted in substantial income to FIDAC.

FIDAC and Peskoff agreed that the Consulting Agreement would be terminable during the life of the accounts only with the written consent of both parties. [Consulting Agreement ¶ 3]. Written consent has never been given by either party and the Consulting Agreement has never been terminated. [Farrell Dep. at 32; Peskoff Dep. at 95]. Thus, despite the absence of a sufficiently definitive price term in the Consulting Agreement Peskoff reasonably believed FIDAC was obligated to compensate him for the fair market value of his services in connection with the Gen Advisors and Sentry Select transactions.

In its opening brief, FIDAC goes to lengths to distort Peskoff's deposition testimony in an effort to portray Peskoff as someone who "was completely unconcerned" by the fact the Consulting Agreement omitted a sufficiently definitive price term because he allegedly believed any payment would be "entirely 'voluntary' on Farrell's part." [D.I. 51 at 7; *see also id.* at 9]. A plain reading of the testimony, however, discloses that FIDAC's arguments are entirely baseless.

During his deposition, Peskoff was asked what factors should be taken into account in determining the fee due under the Consulting Agreement. [Peskoff Dep. at 97]. Peskoff explained at length the factors he believes go into assessing the fee customary in the

7

industry. [*See, e.g.*, Peskoff Dep. at 98 ("the most important factor is introducing the client"), 99

("the longevity of the client"), 99 ("the size and volume of the dollars" under management), 101

("the fee that [FIDAC] is getting paid"), 101 (the finder's new business ideas (such as,

expanding into Canada))]. In light of the contingent nature of all of these factors in future deals,

Peskoff testified "[u]ntil all of those things happen . . . a discussion of what the end game is [vis-

à-vis the payments due to Peskoff] is irrelevant." [Peskoff Dep. at 103; *see also id.* at 101

(testifying that Peskoff's fee under the Consulting Agreement "would be subject to the above"

factors)].

      In describing the analysis, Peskoff made the "voluntary" reference FIDAC

distorts to attempt to support its summary judgment motion. Again, FIDAC's characterization of

the testimony is not supported by the testimony actually given. Specifically, Peskoff described

how the factors he had discussed related to the FBR transaction and the Sentry Select transaction.

With respect to the FBR transaction, Peskoff testified "[FIDAC] paid me a percentage of those

fees, which turned out to be 20 percent. It [*i.e.*, the percentage] turned out to be voluntary on his

part. *There was no negotiation* [regarding that percentage]. *And I always knew that I would*

*get paid what was fair and reasonable within the industry.*" [Peskoff Dep. at 103 (emphasis

added); *see also id.* at 103 (testifying that FIDAC determined Peskoff's fee under the Consulting

Agreement for the FBR transaction "with . . . relevance to what is reasonable within the industry

for the size that is managed")]. Contrary to FIDAC's characterization, Peskoff obviously did not

believe FIDAC was without obligation to compensate him for the services. To the contrary, the

undisputed facts demonstrate Peskoff expected to be paid the fair value of his services according

to industry custom. [*Id.*]. His statement that the 20% paid for FBR was "voluntary," clearly

meant nothing more than "unilateral" in that Farrell came to the conclusion (which Peskoff

8

accepted) that 20% represented the fair value of Peskoff's services in light of industry custom and without any negotiation. [*Id.*]. FIDAC's attempt to mislead this Court into believing Peskoff did not expect and believe he was entitled to be compensated should not be countenanced.

FIDAC also makes the misleading assertion that Peskoff testified the Consulting Agreement could only be read as referring to the FBR transaction. [*See* D.I. 51 at 8]. Again, FIDAC takes the testimony out of context in an attempt to mislead the Court. To the contrary, in the cited portions of Peskoff's deposition transcript, Peskoff is answering a question regarding what the term "accounts" means in the Consulting Agreement. Peskoff explains that the agreement was drawn after he had brought the FBR REIT account to FIDAC for FIDAC to manage and, therefore, "accounts" should be interpreted as the investment accounts Peskoff brings to FIDAC. [*See* Peskoff Dep. at 324-25]. Clearly, Peskoff did not testify he believed "the accounts" meant only the FBR REIT account, but rather it meant any of that type of accounts that Peskoff brings to FIDAC. Peskoff's testimony throughout his deposition clearly shows he believed the Consulting Agreement's open ended language regarding "accounts" covered future introductions including, specifically, Gen Advisors and Sentry Select. [*See* Peskoff Dep. at 95-96]. FIDAC's self-serving mischaracterizations to the contrary should not be seriously considered.

## C. The Gen Advisors Transaction

With the Consulting Agreement in hand, and in light of the course of dealings wherein Peskoff was paid twenty percent of FIDAC's management fees for the FBR REIT account, Peskoff introduced FIDAC to Ernie Baptista, who is a principal of Gen Advisors. [*See* Exhibit "6" at 37 (excerpts of deposition of Ernest P. Baptista, December 12, 2006 (hereinafter Exhibit "6" will be cited to as "Baptista Dep."); Exhibit "7" at 32-33 (excerpts of deposition of

Ronald D. Kazel, December 14, 2006 (hereinafter Exhibit "7" will be cited to as "Kazel Dep.");
Exhibit "8"; Peskoff Dep. at 94]. Baptista and his partners in Gen Advisors had special
knowledge regarding insurance-based investment vehicles. [*See* Farrell Dep. at 43-44]. Peskoff
thought that Baptista and his company would make good business partners for FIDAC. [*See*
Baptista Dep. at 37:8-21].

        Peskoff first introduced and arranged for a meeting between Baptista and Farrell.
[*See* Farrell Dep. at 40; Baptista Dep. at 37]. After the initial meeting, Peskoff arranged for and
attended a second meeting with Baptista, his partner Jeff Messner, Farrell and Kazel, which took
place in January or February of 2002. [*See* Kazel Dep. at 32; Baptista Dep. at 52, 94 (testifying
that Peskoff "ran the first full meeting with everyone, getting everyone on board")]. The purpose
of the meeting was for Baptista and his partner to explain the insurance industry to FIDAC to
explain "how investment vehicles fit within the insurance industry and to determine whether it
was an opportunity for FIDAC to manage a product that fit inside the insurance industry." [*See*
Kazel Dep. at 32-33]. At the close of this meeting, Baptista asked Farrell how Peskoff would be
compensated for putting FIDAC and Gen Advisors together. Farrell responded that Peskoff was
FIDAC's responsibility and Gen Advisors should not pay Peskoff. [*See* Peskoff Dep. at 145;
Farrell Dep. at 55-56].

        After several subsequent discussions, FIDAC and Gen Advisors, on October 10,
2002, signed an agreement to work together on an insurance-based investment product. [*See*
Exhibit "9" (Gen Advisors-FIDAC agreement dated October 10, 2002)]. Again, prior to signing
the agreement Baptista asked Farrell about Peskoff's compensation for the deal. Again, Farrell
said Peskoff was FIDAC's responsibility and Gen Advisors should not pay Peskoff. [*See*
Baptista Dep. at 79]. Farrell wanted to make certain that Peskoff did not "double-dip" with both

10

FIDAC and Gen Advisors paying him for putting the parties together for the transaction. [*See id.*; Farrell Dep. at 56].

The insurance-based fund FIDAC and Gen Advisors planned to launch was a ground-breaking and unique investment product. [*See* Farrell Dep. at 69:21-24; Baptista Dep. at 56; Kazel Dep. at 52]. Therefore, it took several more months after signing the FIDAC-Gen Advisors agreement before the product went to market. [*See* Kazel Dep. at 38-39]. During the course of those months, Peskoff received frequent calls from Farrell about the Gen Advisors deal wherein Farrell would voice his frustrations with the deal. For example, Peskoff was called in to help resolve interpersonal issues between FIDAC and Gen Advisors. [*See* Baptista Dep. at 94-95 (testifying that Peskoff "acted as . . . Mike Farrell's representative when there was a problem that Mike Farrell didn't want to call [Baptista]. For about a year, when Mike got pissed off, pardon the language, about the cost or the time and this wasn't happening [fast] enough, so on and so forth, [Baptista] got a call from Steve [Peskoff], and that's usually every two weeks or at least once a month for a year.")]. Farrell also frequently shared his frustrations with Peskoff regarding the start-up costs associated with launching the insurance-based investment product. In response, Peskoff offered to reimburse Farrell for half of the start-up costs FIDAC had incurred in connection with the Gen Advisors transaction. [Peskoff Dep. at 196; Baptista Dep. at 176:7-9].

Ultimately, FIDAC and Gen Advisors successfully created the Premier fund, which FIDAC has managed since December 2003.

REDACTED

11

SL1 729777v3/100409.00001

REDACTED     REDACTED

REDACTED

Despite acknowledging that Peskoff made the vital introduction and promising to pay him for the same, FIDAC has refused to pay Peskoff a single dime for his crucial role in bringing Gen Advisors and Premier to FIDAC. [*See* Farrell Dep. at 56]. Unfortunately, FIDAC's failure to pay Peskoff the fair value of his services was not limited to the Gen Advisors transaction.

### D. The Sentry Select Transaction

In mid-2002, several months after the Gen Advisors introduction, Peskoff introduced FIDAC to Raniero Corsini of Sentry Select Capital Corp ("Sentry Select"). [*See* Kazel Dep. at 58; Farrell Dep. at 57; *see also* *http://www.sentryselect.com/index.cfm?bioid=7&pagepath=About_us/Executive_team&id=237* (Sentry Select web-biography for Raniero Corsini) (last viewed May 26, 2007)]. Sentry Select is a Canadian wealth management company that designs and markets investment vehicles for the Canadian market.

Peskoff met Corsini while traveling in Canada. After discussing Sentry Select's business with Corsini, Peskoff thought that Sentry Select would make a good business partner for FIDAC and would afford FIDAC an entry point into the Canadian money management market. Accordingly, Peskoff put Corsini in contact with Farrell. [*See* Farrell Dep. at 57; *see also* Kazel Dep. at 58 (testifying that Peskoff spoke to Kazel about Sentry Select before Kazel met with Corsini)]. By September 2002, Sentry Select and FIDAC had executed an agreement to work together. [*See* Exhibit "11"].

REDACTED

12

REDACTED

Ultimately, the Corsini introduction resulted in FIDAC serving as the manager of four investment vehicles -- (i) MBS Trust, (ii) Adjustable Rate Income Fund I, (iii) Adjustable Rate Income Fund II, and (iv) Sentry Select FIDAC Mortgage Income Fund (SSF) (collectively, "MBS Trusts" and respectively, MBS Trusts I-IV) -- that Sentry Select created and markets in Canada. [*See* Kazel Dep. at 59]. As Peskoff had envisioned, the MBS Trusts represented FIDAC's first entry into the Canadian money management market. [*See* Farrell Dep. at 63].

REDACTED

Nevertheless, FIDAC has paid Peskoff only a single payment of $30,000 for a single year of managing MBS Trust I and <u>nothing at all</u> for MBS Trusts II-IV.

REDACTED

## V. QUESTIONS PRESENTED

A. WHETHER THE COURT SHOULD REJECT FIDAC'S ARGUMENT THAT NEW YORK LAW GOVERNS THE CONSULTING RELATIONSHIP BETWEEN FIDAC AND PLAINTIFFS WHERE THE PARTIES SPECIFICALLY AGREED THEIR RELATIONSHIP WOULD BE GOVERNED BY THE SUBSTANTIVE LAW OF THE STATE OF DELAWARE, THE STATE OF FIDAC'S INCORPORATION?

SUGGESTED ANSWER: Yes.

B. WHETHER THE COURT SHOULD DENY FIDAC'S MOTION FOR SUMMARY JUDGMENT BASED ON THE NEW YORK STATUTE OF

13

FRAUDS WHERE DELAWARE DOES NOT HAVE A STATUTE OF FRAUDS CONCERNING FINDER'S FEE AGREEMENTS AND, EVEN IF NEW YORK LAW APPLIES, THE PARTIES HAVE A SERIES OF SIGNED WRITINGS SUFFICIENT TO SATISFY THE NEW YORK STATUTE OF FRAUDS?

SUGGESTED ANSWER: Yes.

C. WHETHER THE COURT SHOULD DENY FIDAC'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' QUANTUM MERUIT CLAIM WHERE THE UNDISPUTED FACTS ESTABLISH THAT PLAINTIFFS SATISFIED ALL OF THE ELEMENTS OF A CLAIM FOR QUANTUM MERUIT INCLUDING THAT PLAINTIFFS RENDERED SERVICES TO FIDAC WITH THE REASONABLE EXPECTATION THAT PESKOFF WOULD BE COMPENSATED FOR HIS SERVICES?

SUGGESTED ANSWER: Yes.

D. WHETHER THE COURT SHOULD DENY FIDAC'S MOTION FOR SUMMARY JUDGMENT WHERE THE UNDISPUTED FACTS DEMONSTRATE THAT FIDAC NOT ONLY PROMISED TO PAY PLAINTIFFS BUT ALSO DISSUADED ANOTHER PARTY FROM PAYING PLAINTIFFS FOR INTRODUCING FIDAC TO GEN ADVISORS WITH THE REASONABLE EXPECTATION THAT PLAINTIFFS WOULD RELY ON THE PROMISE AND PLAINTIFFS IN FACT REASONABLY RELIED ON THE PROMISE TO THEIR DETRIMENT?

SUGGESTED ANSWER: Yes.

## VI. ARGUMENT

### Legal Standard For Motion For Summary Judgment

The legal standard governing summary judgment motions under Rule 56 of the Federal Rules of Civil Procedure is well-established. A court shall grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). It is the moving party's burden to demonstrate that no genuine issue as to any material fact is present. *Ware v. Ball*

14

*Plastic Container Corp.*, 432 F. Supp. 2d 434, 437 (D. Del. 2006) (Robinson, C.J.) (citing

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986)).

A fact is "material" if it could alter the outcome of the case. A factual dispute is

"genuine" if "evidence exists from which a rational person could conclude that the position of

the person with the burden of proof on the disputed issue is correct." *Ware*, 432 F. Supp. 2d at

437 (quoting *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir.

1995) (internal citations omitted). If the moving party meets its burden, the nonmoving party

then "must come forward with 'specific facts showing that there is a genuine issue for trial.'"

*Ware*, 432 F. Supp. 2d at 437 (quoting *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (quoting

FED. R. CIV. P. 56(e))). In making this assessment, the Court must "view the underlying facts

and all reasonable inferences therefrom in the light most favorable to the party opposing the

motion." *Ware*, 432 F. Supp. 2d at 437 (quoting *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d

Cir. 1995)).

Applying this standard, it is evident that FIDAC is not entitled to judgment as a

matter of law.

### A. The Court Should Reject FIDAC's Argument that New York Law Governs the Consulting Relationship Between FIDAC and Plaintiffs Because the Parties Specifically Agreed Their Relationship Would Be Governed by the Substantive Law of the State of Delaware, the State of FIDAC's Incorporation.

Without first undertaking any analysis whatsoever to determine whether an actual

conflict of laws exists, see *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007);

*Huber v. Taylor*, 469 F.3d 67, 74 (3d Cir. 2006) ("Before a choice of law question arises, there

must first be a true conflict between the potentially applicable bodies of law"), FIDAC

conducted a cursory review of <u>some of the contacts</u> relevant to a contractual or quasi-contractual

choice of law analysis where the parties have not agreed between themselves what state's

15

substantive law should govern their relationship. [See D.I. 51 at 26-28]. There is no actual conflict between New York and Delaware law so there is no reason for the Court to conduct a conflict of law analysis under Restatement (Second) of Conflict of Laws § 188.[2] See *Williams v. Stone*, 109 F.3d 890, 893 (3d Cir. 1997) (stating that no conflict of law analysis should be undertaken when the competing state laws would yield the same result); see also *Hammersmith*, 480 F.3d at 230.

      Moreover, FIDAC wholly fails to account for the parties' Consulting Agreement, which is fundamental to Plaintiffs' claims, providing that the parties' relationship should be governed by the substantive law of Delaware. [See Consulting Agreement ¶ 8]. The Court should reject FIDAC's invitation to disregard the parties' agreed-upon choice of Delaware law.[3]

---

[2] If the same result will occur under either law, the court need not engage in a conflicts of law analysis. *Rimmax Wheels LLC v. RC Components, Inc.*, 477 F. Supp. 2d 670, 674 nn.12 & 13 (D. Del. 2007). Here, either Delaware or New York law would yield the same result. *E.g., compare State ex rel. Structa-bond, Inc. v. Mumford & Miller Concrete, Inc.*, 2002 WL 31101938, *3, No. 98C-10-327-JEB (Del. Super. Sept. 17, 2002) (under Delaware law, a quantum meruit "plaintiff must show that it performed services with an expectation that the defendant would pay for them, and that the services were performed under circumstances which should have put the defendant on notice that the performing party expected to be paid by the defendant"), *with Muller Boat Works, Inc. v. Unnamed 52' House Barge*, 464 F. Supp. 2d 127, 141 (E.D.N.Y. 2006) (under New York law, a quantum meruit "plaintiff must establish (1) the performance of services in good faith; (2) the acceptance of those services by the person to whom they are rendered; (3) an expectation of compensation therefor[e]; and (4) the reasonable value of the services."; and *compare Chrysler Corp. v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1032 (Del. 2003) (under Delaware law, a promissory estoppel plaintiff must show "(i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise"), *with Clifford R. Gray, Inc. v. Le Chase Constr. Servs., LLC*, 819 N.Y.S.2d 182, 186 (N.Y. App. Div. 2006) (under New York law, the "party relying upon promissory estoppel must demonstrate that there was a clear and unambiguous promise upon which it reasonably and detrimentally relied"); *see also infra* Part IV.C (explaining that Plaintiffs' claims are not barred by the statute of frauds under Delaware or New York law).

[3] Even if Restatement § 188(2) applies to the instant matter, New York law would not govern Plaintiffs' claims against FIDAC. To the contrary, Section 188 would dictate the application of Virginia law – the state wherein the Consulting Agreement was signed, Peskoff resides, Underhill's principal place of business was located, and Peskoff performed a majority of his services. Delaware has adopted Restatement § 188 to determine the applicable state law in contract and quasi-contract cases wherein the parties have not agreed what state's law should govern their relationship. *See Weiss v. Northwest Broad, Inc.*, 140 F. Supp. 2d 336, 342 (D. Del. 2001) (finding that Delaware has adopted Restatement

16

A federal district court sitting in diversity must apply the forum state's choice of

law rules to determine what state's law governs the case. *Klaxon Co. v. Stentor Mfg. Co.*, 313

U.S. 487, 496 (1941); *Stone & Webster, Inc. v. Shaw Group, Inc.*, 354 B.R. 686, 691 (D. Del.

§§ 187 and 188, and analyzing the parties' breach of contract and promissory estoppel claims under the law agreed-upon by the parties); *Feinberg v. Saunders, Karp & Megrue, L.P.*, 1998 U.S. Dist. LEXIS 19144 *22, No. 97-207-SLR (D. Del. Nov. 13, 1998); *In re Fleming Cos., Inc.*, 347 B.R. 163, 168-69 (Bankr. D. Del. 2006).

When Restatement § 188 applies, to determine what state has the most significant relationship to the claims, Restatement § 188(2) requires the court to consider: (a) the place of contracting, (b) the place of negotiation, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. RESTATEMENT (SECOND) CONFLICT OF LAWS § 188(2). Here, the place of contracting is Virginia, "where occurred the last act necessary . . . to give the [Consulting Agreement] binding effect, assuming, hypothetically, that the local law of the state where the act occurred rendered the contract binding." *Id.* § 188 cmt. e; *see also Feinberg*, 1998 U.S. Dist. LEXIS 19144 *26 n.16 (finding the Court must assume the contract is binding for purposes of its choice of law analysis).

The place of negotiation and the place of the subject matter of the contract do not apply here, because the Consulting Agreement was entered into without any negotiation and the agreement does not concern a chattel, land or a localized risk. [*See* RESTATEMENT § 188 cmt. e].

The place of performance is split between Virginia (where Plaintiffs rendered most of their services), Canada (where Peskoff met with Raniero Corsini regarding the Sentry Select transaction), Rhode Island (where Peskoff frequently called Baptista to discuss and try to resolve FIDAC's concerns regarding the Gen Advisors transaction) and New York (where Peskoff attended at least one meeting regarding the Gen Advisors transaction). Contrary to FIDAC's argument, the place of performance should not be given significant weight where, as here, performance is divided between a number of different states (and countries). *Feinberg*, 1998 U.S. Dist. LEXIS 19144 *29; RESTATEMENT § 188 cmt. e.

The states of residence, domicile and incorporation of the parties include Delaware (the state of incorporation of FIDAC (and MBS, LLP, which is the limited partnership for MBS Trust I [*see* Kazel Dep. at 57:16-23]), Virginia (Peskoff's state of residence and domicile and the location of Underhill's principal place of business), Ohio (Underhill's state of incorporation), and New York (FIDAC's office). The state of residence or incorporation gains even more significance in the choice of law analysis when that state shares other contacts with the claims – such as it is also the place of contracting and performance. Accordingly, this factor favors applying Virginia law where (i) the Consulting Agreement was executed, (ii) Peskoff performed a majority of his services, and (iii) two of the parties (Peskoff and Underhill) reside.

FIDAC also contends that New York law applies because its statute of frauds regarding finder's fee agreements promotes New York's status as an international clearing house. However, as discussed below, the various signed writings between the parties satisfy New York's statute of frauds so this asserted interest is irrelevant. [*See infra* Part VI.C]. *[Footnote continued on following page.]*

In light of the above factors, Virginia clearly has the most significant relationship to Plaintiffs' claims. Accordingly, even if the parties had not specifically agreed Delaware law governs their relationship, FIDAC's argument that New York law applies should be rejected in favor of Virginia law.

17

2006) (Robinson, C.J.). Delaware has adopted Restatement (Second) of Conflict of Laws[4]

§§ 187 and 188 to determine the governing law in cases sounding in contract, including cases

involving quasi-contract, quantum meruit and promissory estoppel claims. *See Weiss v.*

*Northwest Broad, Inc.*, 140 F. Supp. 2d 336, 342 (D. Del. 2001) (finding that Delaware has

adopted Restatement §§ 187 and 188, and analyzing the parties' breach of contract and

promissory estoppel claims under the law agreed-upon by the parties); *Feinberg v. Saunders,*

*Karp & Megrue, L.P.*, 1998 U.S. Dist. LEXIS 19144 *22, No. 97-207-SLR (D. Del. Nov. 13,

1998); *Suburban Trust & Savs. Bank v. Univ. of Delaware*, 910 F. Supp. 1009, 1013 (D. Del.

1995) (stating that Delaware generally applies the parties' choice of law and citing Restatement

§ 187); *Haft v. Dart Group Corp.*, 841 F. Supp. 549, 563 (D. Del. 1993) (applying law chosen by

parties and citing Restatement § 187); *see also In re Fleming Cos., Inc.*, 347 B.R. 163, 168-69

(Bankr. D. Del. 2006) (agreeing with defendant that a quantum meruit claim is considered a

contract claim for choice of law purposes and applying Restatement § 188 to determine which

state's law governs).

    A fundamental policy embodied in Restatement §§ 187 and 188 is the protection

of the justified expectations of the parties. *See J-Squared Technologies, Inc. v. Motorola, Inc.*,

364 F. Supp. 2d 449, 452 n.7 (D. Del. 2005) (finding that promissory estoppel claim must be

governed by law chosen by the parties in a related contract to "protect the expectations of the

parties . . . and to ensure uniform adjudication of plaintiffs' claims"); *see also* RESTATEMENT

§ 188 cmt. b (stating that "the protection of the justified expectations of the parties is of

considerable importance" and therefore courts should apply the law chosen by the parties subject

---

[4] Unless otherwise noted, all references to the "Restatement" are to the Restatement
(Second) of Conflict of Laws.

to the qualifications in Restatement § 187). Accordingly, subject to Restatement § 187,

Delaware courts generally apply the law selected by the parties. *Suburban Trust*, 910 F. Supp.

at 1013.

Restatement § 187 provides that the law chosen by the parties will govern their

rights and duties unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and
>     there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental
>     policy of a state which has a materially greater interest than the chosen state in the
>     determination of the particular issue and which, under the rule of § 188, would be
>     the state of the applicable law in the absence of an effective choice of law by the
>     parties.

RESTATEMENT § 187(2).

Turning to the facts of this case, Peskoff's quantum meruit and promissory

estoppel claims arise from Peskoff's consulting services performed in reliance on the Consulting

Agreement wherein the parties agreed their rights and liabilities would be governed by Delaware

law. [*See* Consulting Agreement ¶ 8]. Moreover, neither of the exceptions in § 187(2)(a)-

(b) applies here.

Delaware shares a material connection to this transaction because FIDAC is

incorporated under Delaware law. It is well-settled that a state has a "substantial relationship to

the parties or the transaction" if one of the parties is incorporated under the laws of the chosen

state. *See Suburban Trust*, 910 F. Supp. at 1013 (finding that substantial relationship

requirement is "clearly" satisfied because the defendant was incorporated in Delaware); *Haft*,

841 F. Supp. at 563 (same). As noted, the substantial relationship requirement is clearly satisfied

here because FIDAC, the party who drafted the agreement selecting Delaware law, is

incorporated under Delaware law. [See D.I. 36 (Answer to Amended Complaint ¶ 3 (admitting

19

that FIDAC is a resident of the District of Delaware))].  Thus, the first exception to Restatement § 187(2) does not apply.

The second exception is also inapplicable.  First, New York law would not apply under Restatement § 188.  [*See infra* n.4].  Second, even if it did, there is no fundamental policy in New York law sufficient to trump the parties' choice of Delaware law.  The only potentially material difference between Delaware and New York law is that New York has a statute of frauds regarding finder's fee agreements.  *See* N.Y. GEN. OBLIG. LAW § 5-701(a)(10).  However, New York courts have determined that § 5-701(a)(10) is not a fundamental policy sufficient to trump an agreed-upon choice of law provision.  *See Nakhleh v. Chem. Construction Corp.*, 359 F. Supp. 357, 360 (S.D.N.Y. 1973).  In *Nakhleh*, the Court had to determine what law governed an oral business broker/finder's fee agreement that included an oral choice of law agreement favoring the law of Saudi Arabia.  Assuming the parties had agreed to apply the law of Saudi Arabia, the court considered whether § 5-701(a)(10) is a fundamental policy of New York sufficient to negate the parties' choice of law under Restatement § 187(2)(b).  *See id.* at 360. Citing *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 300 N.Y.S.2d 817, 248 N.E.2d 576 (1969), the court noted New York has a "strong interest" in enforcing § 5-701(a)(10).  *Id.*  Nevertheless, the court concluded this interest is not "so fundamental that a New York court would not apply the parties' choice of law to the question of the validity of an oral finders' contract."  *Id.; see also Finnish Fur Sales Co., Ltd. v. Juliette Shulof Furs, Inc.*, 770 F. Supp. 139, (S.D.N.Y. 1991) (citing *Nakhleh* with approval and finding that § 5-701(a)(2) does not trump parties' choice of law).  In support of its conclusion, the *Nakhleh* court quoted the comments to Restatement § 187 that specifically address this situation:

> To be "fundamental," a policy must in any event be a substantial one.  Except perhaps in the case of contracts relating to Wills, a

20

policy of this sort will rarely be found in a requirement, such as the statute of frauds that relates to formalities.

RESTATEMENT § 187 cmt. g.

Because neither of the exceptions to Restatement § 187(2) applies, the Court should honor the parties' agreed-upon choice of Delaware law. *Accord Nakhleh*, 359 F. Supp. at 360.

**B. The Court Should Deny FIDAC's Motion for Summary Judgment on the Issue of Statute of Frauds Because Delaware Does Not Have a Statute of Frauds Concerning Finder's Fee Agreements and, Even if New York Law Applies , the Parties Have a Series of Signed Writings Sufficient to Satisfy the Statute of Frauds.**

Contrary to FIDAC's argument, Delaware's statute of frauds, if any state's statute of frauds, governs this case. [See supra Part VI.B]. Under Delaware law, an agreement must be in writing and signed by the party charged for contracts:

    (i)  in consideration of marriage;

    (ii)  for the sale of land;

    (iii)  that cannot be completed within one year;

    (iv)  to answer for the debt of another in excess of $25;

    (v)  to loan money in an amount greater than $100,000 not primarily for personal, family or household purposes, id. § 2714(b).

DEL. CODE. ANN. TIT. 6, § 2714. Peskoff's and FIDAC's Consulting Agreement does not fall within any of these provisions.

Delaware does not require finder's fee agreements to be in writing. *See id.* Similarly, there is no requirement in the law of Delaware that claims for quantum meruit and promissory estoppel must be supported by a signed writing. *See Cheeseman v. Grover*, 490 A.2d 175, 177 (Del. Super. 1984) (finding that an oral agreement in violation of the statute of frauds is

21

enforceable by an action for quantum meruit). Accordingly, Peskoff's quantum meruit and promissory estoppel claims are not barred by Delaware's statute of frauds and FIDAC's motion for summary judgment should be denied.

Moreover, even if the Court were to determine that New York law applies, New York's statute of frauds does not bar Peskoff's claims for quantum meruit and promissory estoppel. Although New York has a statute of frauds that applies to finder's fee agreements. N.Y. GEN. OBLIG. LAW § 5-701(a)(10), the writing requirement under § 5-701(a)(10) is significantly relaxed for quasi-contract claims, such as quantum meruit or promissory estoppel, which by their very nature are never supported by an enforceable written contract. *See Flammia v. Mite Corp.*, 401 F. Supp. 1121, 1130 (E.D.N.Y. 1975) (citing *Morris Cohon & Co. v. Russell*, 245 N.E.2d 712 (N.Y. 1969)); *Athletes and Artists, Inc. v. Millen*, 1999 WL 587883, *7, No. 96-Civ.-9996 (S.D.N.Y. Aug. 4, 1999)   In fact, Peskoff and FIDAC have a written agreement (and several other writings) that satisfies New York's statute of frauds. [*See, e.g.*, Consulting Agreement; Exhibit "7"; Exhibit "10"]. Therefore, Peskoff's quasi-contract claims are not barred under § 5-701(a)(10).

Section 5-701(a)(10) bars quasi-contract claims only "where there is a complete absence of any memorandum." *Flammia v. Mite Corp.*, 401 F. Supp. 1121, 1130 (E.D.N.Y. 1975) (citing *Morris Cohon & Co. v. Russell*, 245 N.E.2d 712 (N.Y. 1969)); *Athletes and Artists, Inc. v. Millen*, 1999 WL 587883, *7, No. 96-Civ.-9996 (S.D.N.Y. Aug. 4, 1999) (same). The statute of frauds is satisfied with respect to a quasi-contract claim so long as there is any "writing that evidences that the plaintiff was engaged by the defendant to assist in a transaction that was later consummated." *Gruppo, Levy & Co. v. ICOM Info. & Communs., Inc.*, 2004 U.S. Dist. LEXIS 27320, *36, No. 01-Civ.-8922 (S.D.N.Y. Jun. 28, 2004); *see also Davis & Mamber v.*

22

*Adrienne Vittadini, Inc.*, 622 N.Y.S.2d 706, 707 (N.Y. App. Div. 1995) (stating that "a sufficient memorandum need only evidence the fact of plaintiff's employment by defendant to render the alleged services").

In the case *sub judice*, there is a series of writings, each signed by FIDAC, which individually and/or collectively satisfies New York's statute of frauds. First, the parties executed the Consulting Agreement under which the parties agreed FIDAC would pay Peskoff an unidentified percentage of FIDAC's monthly management fee for all accounts Peskoff generated for FIDAC. [*See* Consulting Agreement ¶ 2]. By its plain terms, the Consulting Agreement was terminable during the life of any of the relevant accounts only by mutual written consent of both FIDAC and Peskoff. [*Id.* ¶ 3]. At the time of the Baptista and Corsini introductions (and to the present), neither FIDAC nor Peskoff ever consented in writing (or by any means) to terminate the Consulting Agreement. [*See* Peskoff Dep. at 95-96; Farrell Dep. at 32].

## REDACTED

Kazel authenticated this document with his typewritten signature in satisfaction of the statute of frauds' signed writing requirement. *See Rosenfeld v. Zerneck*, 776 N.Y.S.2d 458, 460 & n.3 (N.Y. Sup. 2004) (holding that typewritten signature at bottom of email satisfies written requirement of § 5-701) (citing N.Y. GEN. OBLIG. LAW § 5-701(b)(4)); *see also Bazak Intern. Corp. v. Tarrant Apparel Group*, 378 F. Supp. 377, *386 (S.D.N.Y. 2005) (finding that type-written signature on company letter satisfies statute of frauds' requirement of a signed writing); *La Mar Hosiery Mills, Inc. v. Credit & Commodity Corp.*, 28 Misc.2d 764, 768, 216 N.Y.S.2d 186, 190 (N.Y. City Ct. 1961) (same).

23

Finally, FIDAC wrote a letter to Peskoff acknowledging that Peskoff made the Gen Advisors and Sentry Select introductions that resulted in the Premier and MBS Trusts accounts and that FIDAC promised to pay Peskoff for his role in those transactions. [*See* Exhibit "8" (Letter dated April 12, 2004 from Ron Kazel to Stephen Peskoff acknowledging Peskoff's role in MBS Trusts transactions and Premier transaction and FIDAC's intent to compensate Peskoff for same). This letter was signed by Ron Kazel an executive officer of FIDAC. [*Id.*].

These documents individually and collectively satisfy New York's statute of frauds which bars quasi-contract claims such as Peskoff only "where there is a complete absence of any memorandum." *Flammia*, 401 F. Supp. at 1130. Accordingly, even if the Court were to determine that New York law applies (which, in light of the parties' choice of law agreement favoring Delaware law, it should not), the statute of frauds does not bar Peskoff's quasi-contract, quantum meruit and promissory estoppel claims and the Court should deny FIDAC's motion for summary judgment.

C. **The Court Should Deny FIDAC's Motion for Summary Judgment on Plaintiffs' Quantum Meruit Claim Because the Undisputed Facts Establish that Plaintiffs Satisfied All of the Elements of a Claim for Quantum Meruit Including that Plaintiffs Rendered Services to FIDAC with the Reasonable Expectation that They Would Be Compensated.**

FIDAC contends Peskoff cannot make out a *prima facie* claim for quantum meruit because Peskoff allegedly did not expect to be paid for his services. FIDAC's argument is based on a mischaracterization of New York law and a total disregard of the undisputed facts establishing that Peskoff is entitled to quantum meruit relief under Delaware (or New York) law. FIDAC's motion should be denied.

"To prevail on a *quantum meruit* claim, a plaintiff must show that it performed services with an expectation that the defendant would pay for them, and that the services were performed under circumstances which should have put the defendant on notice that the

24

performing party expected to be paid by the defendant." *State ex rel. Structa-bond, Inc. v.*

*Mumford & Miller Concrete, Inc.*, 2002 WL 31101938, *3 & n.9, No. 98C-10-327-JEB (Del.

Super. Sept. 17, 2002) (citing *Construction Systems Group, Inc. v. The Council of Sea Colony*,

1995 WL 622421, No. 449, 1994 (Del. Sept. 28, 1995); *Bellanca Corp. v. Bellanca*, 169 A.2d

620, 623 (Del. 1961)); *see Daystar Sills, Inc. v. Anchor Investments, Inc.*, 2007 WL 1098129, *5,

No. 04L-03-001 (Del. Super. Apr. 12, 2007) (citing the same elements).[5]  FIDAC does not

dispute that (i) Peskoff performed services, (ii) Peskoff's services were valuable, or (iii) FIDAC

accepted Peskoff's services knowing he expected to be compensated for the services.  [*See*

D.I. 51 at 30-32].  Rather, FIDAC simply contends Peskoff has not established that he expected

FIDAC to compensate him for his services.  [*See* D.I. 51 at 30-32].  FIDAC's argument is

frivolous and should be rejected.

    FIDAC wholly ignores the mountain of undisputed evidence establishing that

Peskoff expected to be compensated for his services.  Indeed, in light of (i) Peskoff's undisputed

testimony that he expected to be compensated [*see, e.g.,* Peskoff Dep. at 95 (testifying that

Peskoff re-read the Consulting Agreement contemporaneous with the Baptista and Corsini

introductions and he believed "part of the general consulting contract that I had signed with Mike

Farrell covered bringing in customers, just like I brought in FBR REIT, and that [with respect to

the Baptista and Corsini introductions] I was covered under that agreement")], (ii) the existence

of the Consulting Agreement that specifically states FIDAC is obligated to compensate Peskoff

---

[5] FIDAC acknowledges that the substantive elements of a quantum meruit claim are essentially the same under Delaware and New York law.  [*See* D.I. 51 at 32 n.2]; *e.g., compare State ex rel. Structa-bond, Inc. v. Mumford & Miller Concrete, Inc.*, 2002 WL 31101938, *3, No. 98C-10-327-JEB (Del. Super. Sept. 17, 2002), *with Muller Boat Works, Inc. v. Unnamed 52' House Barge*, 464 F. Supp. 2d 127, 141 (E.D.N.Y. 2006) (under New York law, a quantum meruit "plaintiff must establish (1) the performance of services in good faith; (2) the acceptance of those services by the person to whom they are rendered; (3) an expectation of compensation therefor[e]; and (4) the reasonable value of the services"; [*see also* D.I. 51 at 30 (citing same elements)].

for his services on all accounts [*see* Consulting Agreement ¶ 2, 3; Peskoff Dep. at 95-96

(testifying that the Consulting Agreement was never terminated); Farrell Dep. at 32 (testifying

that Farrell is not aware of ever terminating the Consulting Agreement)], (iii) the parties' past

course of dealings where FIDAC had compensated Peskoff for the same type of services [*see*

Exhibit "5"], and (iv) the industry custom of paying finder's fees [*see* D.I. 51 at 2, 5

(acknowledging that it is "customary in the industry" to pay finder's fees and "[t]ypically, a

finder will receive a percentage of the management fees earned on the funds provided by the

client that finder introduced to FIDAC"); Kazel Dep. at 9-10 (same); Peskoff Dep. at 100-03

(same)], FIDAC cannot in good faith contend that Peskoff acted gratuitously and without

expectation of being compensated. [*See also* Exhibit "12" (letter from Peskoff to Farrell dated

March 13, 2003 regarding payment for Gen Advisors and Sentry Select transactions pursuant to

Consulting Agreement); Exhibit "13" (Peskoff notes from call with Baptista regarding

expectation of payment under Consulting Agreement)].

        Wholly ignoring the undisputed evidence of Peskoff's actual expectation of being

compensated by FIDAC, FIDAC relies entirely on *Prestige Caterers v. Kaufman*, 290 A.D.2d

295, 736 N.Y.S.2d 335 (N.Y. App. Div. 2002), for the proposition that, to show the plaintiff

expected to be compensated, "a plaintiff must establish that it rendered services at the behest of

the defendant." [D.I. 51 at 31]. First, Delaware, not New York, law applies here. [*See supra*

Part VI.B]. Delaware law does not support the proposition FIDAC asserts. *See, e.g., Bellanca

Corp. v. Bellanca*, 169 A.2d 620 (Del. 1961) (analyzing the facts of the relationship and finding

an expectation of compensation despite the absence of any request by defendant that plaintiff

perform the services).

Even if New York law applies, *Prestige Caterers* does not support FIDAC's argument. Like in Delaware, New York law provides a "plaintiff may establish that its course of dealings with defendant established a quasi-contractual relationship wherein plaintiff reasonably expected compensation for its services." *Milton Abelese, Inc. v. Creekstone Farms Premium Beef, LLC*, 2007 WL 1434990 *, No. 06-CV-3893 (E.D.N.Y. May 14, 2007); *see also Priel v. Heby*, 2004 WL 1753375, *4, No. 111605/04 (N.Y.S. May 26, 2004) (holding that a plaintiff has a claim for quantum meruit for the value of services rendered under an unenforceable contract).

Moreover, *Prestige Caterers*, which FIDAC cites with no discussion or analysis whatsoever, is inapposite here. Contrary to FIDAC's argument, *Prestige Caterers* simply stands for the proposition that a plaintiff does not reasonably expect to be compensated <u>by the defendant</u>, when the services were performed <u>at the behest of a third party</u>. *Prestige Caterers*, 736 N.Y.S.2d at 335. In *Prestige Caterers*, a father [Kaufman] contracted with the plaintiff catering company for catering services for his daughter's wedding. After only paying part of the catering bill, Kaufman filed for bankruptcy and the balance of his debt to the catering company was discharged. The catering company then sought recovery in quantum meruit from the bride and broom [the Gores] because they benefited from the catering company's services rendered to Kaufman. Relying on *Kagan v. K-Tel Entertainment, Inc.*, 172 A.2d 375, 376, 568 N.Y.S.2d 756 (N.Y.S. App. Div. 1991), the court held "[a]lthough the Gores benefited from plaintiff's services, plaintiff made no showing . . . that its services were rendered at the Gores' behest and thus there is no basis for plaintiff to recover in quantum meruit ***against the Gores***." *Prestige Caterers*, 736 N.Y.S.2d at 335 (emphasis added).

The court in *Kagan* aptly stated the rule for which *Prestige Caterers* stands and FIDAC misapprehends: "if services were <u>performed at the behest of someone other than the</u>

27

defendant, the plaintiff must look to that person for recovery." *Kagan*, 568 N.Y.S.2d at 757

(citing *Citrin v. Columbia Broadcasting*, 29 A.D.2d 740, 286 N.Y.S.2d 706 (N.Y.S. App. Div.

1968)) (emphasis added); *see also U.S. Fire Ins. Co. v. Am. Home Assurance Co.*, 796 N.Y.S.2d

603 (N.Y.S. App. Div. 2005) (finding there is no claim for quantum meruit against the defendant

where "plaintiff provided service to [a third-party], not to defendant"). Likewise, in *Citrin*, the

court explained that a stranger to an agreement between the plaintiff and a third party cannot be

held liable under a quasi-contract theory simply because it benefited from the services plaintiff

performed for the third-party. *See Citrin*, 286 N.Y.S.2d at 706.

      Peskoff does not claim FIDAC is liable under a quasi-contract theory of recovery

because some third party breached a contract with Peskoff whereby FIDAC was incidentally

benefited. [*See generally* D.I. 31]. Rather, Peskoff's quantum meruit claim is to recover the

value of Peskoff's services rendered to FIDAC, for FIDAC's benefit, in reliance on a written

agreement between Peskoff and FIDAC. [*Id.*]; *see also Stoltz Realty Co. v. Paul*, 1995 WL

654152, \*10, No. 94C-02-208 (Del. Super. Sept. 20, 1995) (holding that, under quantum meruit,

"the plaintiff may recover the reasonable value of the services it provided to the defendant"

where the parties' express agreement is rendered unenforceable); *Priel*, 2004 WL 1753375 at \*4

(holding that "in the event the contracts between the parties are found to be unenforceable,

allegations that Priel performed services in good faith, that Heby accepted these services and

expected compensation for these services are adequate to state a cause of action for quantum

meruit."). Accordingly, *Prestige Caterers* is inapposite and does not support FIDAC's motion

for summary judgment.

      The undisputed facts establish that Peskoff performed services with the

expectation that FIDAC would compensate him for the fair value of those services. [*See, e.g.*,

28

Peskoff Dep. at 103 (testifying that Peskoff expected to be paid "what was fair and reasonable in the industry" for the introductions he made to FIDAC pursuant to the Consulting Agreement)].

Accordingly, the Court should deny FIDAC's motion for summary judgment on Peskoff's claim for quantum meruit.[6]

> **D. The Court Should Deny FIDAC's Motion for Summary Judgment Because the Undisputed Facts Demonstrate that FIDAC not only Promised to Pay Plaintiffs but Also Dissuaded Another Party from Paying Plaintiffs for Introducing FIDAC to Gen Advisors with the Reasonable Expectation that Plaintiffs Would Rely on the Promise and Plaintiffs in Fact Reasonably Relied on the Promise to Their Detriment.**

The Court should enforce FIDAC's multiple promises to pay Peskoff for the Gen Advisors introduction under the quasi-contractual theory of promissory estoppel. To the contrary, the undisputed facts establish each of the elements for liability against FIDAC under the theory of promissory estoppel.

To establish a promissory estoppel claim, the "plaintiff must demonstrate . . . that: (i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise." *Chrysler Corp. v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1032 (Del. 2003) (quoting *Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000)); *see also Clifford R. Gray, Inc. v. Le Chase Constr. Servs., LLC*, 819 N.Y.S.2d 182, 186 (N.Y. App. Div.

---

[6] As previously stated, FIDAC does not contend the evidence fails to satisfy the other elements of a quantum meruit claim. [*See* D.I. 51 at 30-32]. Accordingly, Plaintiffs do not address those elements here. However, Plaintiffs demonstrated that the undisputed facts satisfy each of the elements necessary to prove liability for quantum merit in Plaintiffs' opening brief in support of their motion or partial summary judgment. [*See* D.I. 47 & 54 at 18-24]. Although FIDAC has waived any argument on summary judgment that Plaintiffs failed to satisfy the other elements, it should be noted that the Court also should deny FIDAC's motion for summary judgment for the additional reasons discussed in Plaintiffs' summary judgment opening brief.

29

2006) (providing essentially the same elements under New York law). "The purpose of the promissory estoppel doctrine is to prevent injustice." *Lord*, 748 A.2d at 398.

FIDAC asserts that it never made any promises to Peskoff. However, FIDAC's assertion is contrary to the facts in the record. FIDAC promised to pay Peskoff for his services multiple times. First, FIDAC promised in the Consulting Agreement that it would pay Peskoff for each of the accounts he brought to FIDAC. [*See* Consulting Agreement ¶ 2]. FIDAC's reasonable expectation in making this promise was to induce Peskoff to act – *i.e.*, to provide the consulting services. In fact, the promise of payment in the Consulting Agreement did just that. As a result of FIDAC's promise, Peskoff dedicated his time and energies marketing FIDAC's services and capabilities to Ernie Baptista and persuading Baptista to pursue a business venture with FIDAC. Peskoff then introduced FIDAC to Baptista, attended meetings and took telephone calls trying to help create and maintain a new business relationship between Gen Advisors and FIDAC.

Shortly after the Baptista introduction, FIDAC made a second promise of payment. During a meeting involving Baptista, Mike Farrell and Peskoff (and possibly others), Baptista asked Farrell how Peskoff would be compensated for his role in putting the parties together. Farrell responded that Peskoff was FIDAC's responsibility and that Gen Advisors should not compensate Peskoff for bringing the parties together. [*See* Peskoff Dep. at 145; Farrell Dep. at 55-56]. This promise reasonably prompted further action and reliance by Peskoff. Specifically, Peskoff continued to make himself available to both FIDAC and Gen Advisors to help maintain the relationship and ease problems that arose prior to consummation of the transaction. [*See* Baptista Dep. at 94-95]. Furthermore, Peskoff refrained from seeking any

30

compensation from Gen Advisors, a party who (by the very nature of its inquiries to Farrell) clearly believed Peskoff was entitled to compensation.

In light of Peskoff's reasonable reliance on FIDAC's promises of payment for the Gen Advisors transaction, and Farrell's insistence that Gen Advisors not pay Peskoff in order to avoid "double dipping" [*see* Farrell Dep. at 56; Baptista Dep. at 79], injustice can be avoided only by enforcement of FIDAC's promises. *Chrysler Corp.*, 822 A.2d at 1032; *Lord*, 748 A.2d at 398. Accordingly, the Court should deny FIDAC's motion for summary judgment on Peskoff's promissory estoppel claim.

## VII. CONCLUSION

The linchpin of FIDAC's motion is that the Court should completely ignore the parties' written, signed Consulting Agreement – despite its legal significance for purposes of choice of law, statute of frauds, quantum meruit and promissory estoppel – simply because FIDAC's error in drafting the Consulting Agreement rendered it unenforceable in an express contract claim. Pull the pin and the wheels fall off. The Court should deny Defendant's motion for summary judgment.

31

Respectfully submitted,

Dated: June 26, 2007

STEVENS & LEE, P.C.

By: _____

Joseph Grey (DE Bar No. 2358)
G. Thompson Bell, III, *pro hac vice*
Pa. Attorney I.D. No. 32649
Todd J. Cook, *pro hac vice*
Pa. Attorney I.D. No. 89041
1105 North Market Street
Seventh Floor
Wilmington, DE 19801
TEL: (302) 654-5180
FAX: (302) 654-5181
EMAIL: jg@stevenslee.com
        gtb@stevenslee.com
        tjc@stevenslee.com

OF COUNSEL:

RUBEN & ARONSON, LLP

Robert L. Ruben, *pro hac vice*
D.C. Attorney I.D. No. 414580
Marshall F. Berman, *pro hac vice*
D.C. Attorney I.D. No. 020743
4800 Montgomery Lane, Suite 150
Bethesda, MD 20814
TEL: (301) 951-9696
FAX: (301) 951-9636
EMAIL: rruben@randalaw.com
        mberman@randalaw.com

*Attorneys for Plaintiffs Underhill Investment Corp.
and Stephen D. Peskoff*

32

## CERTIFICATE OF SERVICE

I, Joseph Grey, hereby certify that on this 26th day of June, 2007, I caused true and

correct copies of the foregoing Answering Brief In Opposition to Defendant's Motion for

Summary Judgment to be served by the means indicated below addressed to Defendant's counsel

as follows:

John L. Reed, Esquire
Denise Seastone Kraft, Esquire
EDWARD'S ANGELL PALMER & DODGE LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801
BY HAND DELIVERY

Gerald A. Novack, Esquire
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
599 Lexington Avenue
New York, New York 10022
BY FEDERAL EXPRESS

Joseph Grey