IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| **UNDERHILL INVESTMENT CORPORATION**, *by and through Stephen D. Peskoff as successor in interest* and **STEPHEN D. PESKOFF**, *individually*, | : : : : : : : | |
| Plaintiffs, | : : | C.A. No. 06-99-SLR |
| v. | : : : | |
| **FIXED INCOME DISCOUNT ADVISORY COMPANY**, | : : : | |
| Defendant. | : : | |

**DEFENDANT FIXED INCOME DISCOUNT ADVISORY COMPANY'S
<u>REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

**EDWARDS ANGELL PALMER & DODGE LLP**
John L. Reed (I.D. No. 3023)
Joseph B. Cicero (I.D. No. 4388)
919 North Market Street, 15th Floor
Wilmington, DE 19801
302.777.7770
302.777.7263 (Fax)

**OF COUNSEL:**
Gerald A. Novack (*pro hac vice*)
Sarah P. Kenney (*pro hac vice*)
**KIRKPATRICK & LOCKHART
   PRESTON GATES ELLIS LLP**
599 Lexington Avenue
New York, New York 10022
212.536.3900
212.536.3901 (Fax)

DATED: July 10, 2007

## **TABLE OF CONTENTS**

**PAGE**

ARGUMENT ................................................................................................................................ 1

I.    PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF FRAUDS .................. 1

II.    NO UNDERLYING CLAIM FOR PROMISSORY ESTOPPEL ...................................... 3

III.    NO UNDERLYING CLAIM FOR QUANTUM MERUIT ................................................ 4

CONCLUSION……………............................................................................................................ 8

## **TABLE OF AUTHORITIES**

**PAGE**

**CASES**

*American- European Art Assocs., Inc. v. Trend Galleries, Inc.*,
    227 A.D.2d 170, 641 N.Y.S.2d 835 (N.Y. App. Div. 1996) .......................................... 4, 5

*Argo Marine Sys., Inc. v. Camar Corp.*,
    755 F.2d 1006 (2d Cir. 1985) ............................................................................................ 4

*Chrysler Corp. v. Chaplake Holdings, Ltd.*,
    822 A.2d 1024 (Del. 2003) ................................................................................................ 3

*Gruppo, Levey & Co. v. ICOM Info. & Commc'ns, Inc.*,
    No. 01 Civ. 8922, 2004 U.S. Dist. LEXIS 27320 (S.D.N.Y. June 28, 2004) ...................... 1

*Landis v. Science Mgmt. Corp.*,
    C.A. No. 7483, 1991 Del. Ch. LEXIS 19 (Del. Ch. Feb. 14, 1991) ................................... 1

*Olsen v. T.A. Tyre General Contractor, Inc.*,
    907 A.2d 146 (Table), 2006 Del. LEXIS 474 (Del. Aug. 24, 2006) .................................. 7

*Prestige Caterers v. Kaufman*,
    290 A.D.2d 295, 736 N.Y.S.2d 335 (N.Y. App. Div. 2002) ............................................... 4

*Int'l Paper Co. v. Suwyn*,
    978 F. Supp. 506 (S.D.N.Y. 1997) ..................................................................................... 4

*Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*,
    454 F.Supp.2d 62 (E.D.N.Y. 2006) .................................................................................... 3

*United Bldg. Maintenances Assocs., Inc. v. 510 Fifth Ave. LLC*,
    18 A.D.3d 333, 795 N.Y.S.2d 535 (N.Y. App. Div. 2005) ................................................. 4

**STATUTES**

N.Y. Gen. Oblig. Law § 5-701(a)(10) ............................................................................................ 1

FIDAC submits this Reply Brief in response to the arguments made in Plaintiffs' Answering Brief opposing FIDAC's motion for summary judgment (the "Peskoff Answering Brief").[1]

## ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF FRAUDS

As previously demonstrated, New York's Statute of Frauds covers both contract and quantum meruit claims arising out of introductions and the claimed facilitation of business transactions. (*See* FIDAC Brief, pp. 15, 17, 28-30, D.I. 51; FIDAC Answering Brief, pp. 4, 13-14, 22-23, 27, D.I. 66, 72.)[2] Therefore, absent a writing evidencing an agreement to pay Peskoff for his services, the Statute of Frauds is a complete defense to Peskoff's quantum meruit claims. N.Y. Gen. Oblig. Law § 5-701(a)(10). Nor can Peskoff avoid application of the Statute of Frauds by claiming promissory estoppel, because only an "unconscionable injury" will warrant a refusal to apply the Statute, and it is settled that a claim of a lost fee does not constitute any such unconscionable injury. (FIDAC Brief, pp. 29-30, D.I. 51.)

The writing necessary to satisfy the Statute of Frauds must reflect the existence of an agreement by FIDAC that if Peskoff introduced FIDAC to Gen Advisors or Sentry Select, or listened to his friend Farrell's complaints, then FIDAC would pay Peskoff a fee. *Gruppo, Levey & Co. v. ICOM Info. & Commc'ns, Inc.*, No. 01 Civ. 8922, 2004 U.S. Dist. LEXIS 27320, at *36 (S.D.N.Y. June 28, 2004); *Landis v. Science Mgmt. Corp.*, C.A. No. 7483, 1991 Del. Ch. LEXIS 19, at *13 (Del. Ch. Feb. 14, 1991). (*See* Peskoff Answering Brief, pp. 22-23, D.I. 63, 74;

---

[1] This brief uses the same defined terms as were utilized in the opening brief filed by FIDAC (the "FIDAC Brief"). As in that brief, for convenience FIDAC often refers to Underhill and Peskoff as "Peskoff."

[2] FIDAC's Answering Brief in opposition to Plaintiffs' motion for partial summary judgment is cited as "FIDAC Answering Brief, p. __."

FIDAC Answering Brief, p. 22, D.I. 66, 72.)  Peskoff has admitted that there were no such oral agreements.  Nor is there any such agreement contained in any of the documents cited by Peskoff as writings allegedly satisfying the Statute of Frauds.

The first document is the February 2000 Letter.  (A-35-A-37.)  Wholly apart from the fact that the Letter was intended to apply only to the FBR REIT transaction, it does not aid Peskoff here.  Peskoff's claim here is that he should be paid for introducing business partners – not FIDAC clients – and listening to his friend Farrell's complaints about a business partner, not a client.  The Letter does not contain any reference, much less any agreement, to compensate Peskoff for introducing business partners (versus clients who opened accounts with FIDAC), nor any reference to any agreement that Peskoff would be paid for listening to his friend Farrell's complaints about a business transaction not involving any client relationship.  (A-35-A-37; *see* Peskoff Answering Brief, p. 9, D.I. 63, 74; FIDAC Answering Brief, p. 14, D.I. 66, 72.)

Peskoff admitted that he viewed the Letter as dealing with the introduction of "customers" or clients.  Peskoff's Answering Brief (quoting Peskoff's testimony) contains the following statement of Peskoff's position:

> Part of the . . . contract that I had signed with Mike Farrell covered bringing in <u>customers</u>, just like I brought in FBR REIT, and that [with respect to the Baptista and Corsini introductions] I was covered under that agreement . . . .

(Peskoff Answering Brief, p. 25, D.I. 63, 74 (emphasis added).)

The conclusion drawn by Peskoff is a non-sequitur.  Baptista and Corsini were not customers or clients.  Therefore, the Letter had no application to the Gen Advisors or Sentry Select transactions.

The second document, the Sentry Select-FIDAC Letter of Intent, does not even mention Peskoff or Underhill.  (B-31–B-33.)  Peskoff makes no attempt to explain how the Letter of

Intent could possibly be seen as evidence of any agreement to employ Peskoff or Underhill. (Peskoff Answering Brief, p. 23, D.I. 63, 74.)

The third document is Kazel's April 20, 2004 letter. (*Id.* at p. 24) That letter does not refer to any agreement to employ Peskoff for any purpose, and disavows any obligation to pay him anything. (A-42; Pesk. Ex. 16; *see* FIDAC Answering Brief, p. 23, D.I. 66, 72.)

In short, none of these writings evidences the existence of any agreement by FIDAC to compensate Peskoff for introductions to business partners or listening to Farrell's complaints. (For further discussion of this argument, *see* FIDAC Answering Brief, pp. 22-23, D.I. 66, 72.)

Even if the Statute of Frauds was not a complete bar, Peskoff has failed to make out the elements of a prima facie case for either promissory estoppel or quantum meruit.

## II.     NO UNDERLYING CLAIM FOR PROMISSORY ESTOPPEL

To succeed on the basis of promissory estoppel, Peskoff must present competent evidence establishing that FIDAC promised to pay him, and that Peskoff reasonably relied on that promise by making the introductions and listening to Farrell's complaints about Gen Advisors. *Chrysler Corp. v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1032 (Del. 2003) (Delaware law); *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F.Supp.2d 62, 73-74 (E.D.N.Y. 2006) (New York law). (*See* FIDAC Brief, p. 31, D.I. 51.) Peskoff is unable to satisfy this burden.

It is undisputed that: (a) <u>no one at FIDAC ever orally promised</u> Peskoff that if he made the Gen Advisors or Sentry Select introductions or listened to Farrell's complaints, FIDAC would then pay him for doing so (A-108, A-147, A-149, A-182; Peskoff, pp. 137, 279, 285, 427, 429); and (b) Peskoff never performed any services for FIDAC with respect to Gen Advisors or Sentry Select <u>in reliance upon any oral promise</u> of payment. (A-147, A-182; Peskoff, pp. 279,

427, 429) (*See* FIDAC Answering Brief, p. 13-14, D.I. 66, 72; Peskoff Answering Brief, p. 11, D.I. 63, 74.)

Peskoff again attempts to save his claim by pointing to the February 2000 Letter. But, as previously shown, the Letter does not contain any request for Peskoff to make any introductions to business partners or listen to Farrell's complaints, much less a promise to pay him for doing so. (*See supra* page 2.) Therefore, the Letter cannot provide the missing "promise" whose absence defeats Peskoff's promissory estoppel claim. (FIDAC Answering Brief, pp. 14-19, D.I. 66, 72.)

### III.    NO UNDERLYING CLAIM FOR QUANTUM MERUIT

To establish a quantum meruit claim under New York law, Peskoff must show more than the fact that he provided services of some sort to FIDAC. A prerequisite to any quantum meruit claim is a showing that FIDAC asked Peskoff to perform the services in dispute. *See United Bldg. Maintenances Assocs., Inc. v. 510 Fifth Ave. LLC*, 18 A.D.3d 333, 334, 795 N.Y.S.2d 535, 535 (N.Y. App. Div. 2005) (upholding quantum meruit claim because plaintiff presented evidence that it performed services at defendant-beneficiary's behest); *Prestige Caterers v. Kaufman*, 290 A.D.2d 295, 295, 736 N.Y.S.2d 335, 335 (N.Y. App. Div. 2002) (no quantum meruit claim where plaintiff failed to present evidence that services were performed at behest of defendant-beneficiary).

Here, it is undisputed that Peskoff made the introductions on his own initiative and without any request by Farrell. (A-149; Peskoff, p. 285.)

In addition, under New York law Peskoff must show that, at the time he made the introductions, he had a reasonable expectation that he would be compensated for making them. *Argo Marine Sys., Inc. v. Camar Corp.*, 755 F.2d 1006, 1011 (2d Cir. 1985); *Int'l Paper Co. v. Suwyn*, 978 F. Supp. 506, 513 (S.D.N.Y. 1997); *American-European Art Assocs., Inc. v. Trend*

*Galleries, Inc.*, 227 A.D.2d 170, 171, 641 N.Y.S.2d 835, 835 (N.Y. App. Div. 1996). Similarly, Peskoff would have to show a reasonable basis for believing that he would be paid for listening to his friend's complaints about the Gen Advisors transactions.

In the circumstances presented here, Peskoff could not have had any such reasonable expectation. Peskoff admits that Farrell rejected all of Peskoff's offers to perform services with respect to Gen Advisors and Sentry Select. (A-147; Peskoff, p. 279 ("Underhill offered to do certain things with both companies [Gen Advisors and Sentry Select], and they said they didn't need our help."); A-108 ; Peskoff, p. 137; *see* FIDAC Answering Brief, pp. 19-20, D.I. 66, 72.) Moreover, Peskoff admits that he considered Farrell to be a "close" and "intimate" friend. (A-94, A-123, A-144; Peskoff, pp. 78, 180, 265.) If Peskoff considered what he was doing as being beyond the bounds of friendship, he could and should have warned Farrell that there would be a price to pay for talking to his "friend" about the Gen Advisors transaction.

Nor does any of the documentary evidence cited by Peskoff show that he expected compensation at the time he made the introductions.

Peskoff first cites a letter, dated March 13, 2003, that he wrote to Farrell and he suggests this Letter shows that Peskoff reasonably believed he was <u>entitled</u> to be compensated under the February 2000 Letter. (Peskoff Answering Brief Ex. 11; Peskoff Answering Brief, p. 26, D.I. 63, 74.) But the March 2003 letter proves the opposite. It refers to the February 2000 Letter as merely giving Farrell a basis upon which he might choose to justify any payment. As Peskoff put it, the February 2000 Letter "*allows me to share fees with you.*" (Peskoff Answering Brief Ex. 11) (emphasis added)[3]

---

[3] Peskoff has not presented any evidence to show that FIDAC ever responded to this letter (Peskoff Answering Brief, p. 26, D.I. 63, 74), nor (as he admits) did Peskoff ever follow up with Farrell by discussing the February 2000 Letter after he mailed the March 2003 letter. (A-82, A-94-A-95, A-132-A-133, A-143; Peskoff, pp. 30-32, 80-85, 219-20; *see* FIDAC Answering Brief, pp. 2, 11, D.I. 66, 72.) If Peskoff felt entitled to compensation

Second, Peskoff cites his own internal memo, dated December 22, 2004. (Peskoff Answering Brief Ex. 12.) This memo shows nothing more than Peskoff trying to figure out a theory upon which he might make some claim against FIDAC, and making reference to the February 2000 Letter. Peskoff claims this memo proves he expected compensation at the time he performed the alleged services. (Peskoff Answering Brief, pp. 25-26, D.I. 63, 74.) But the memo was written years after the introductions and makes no mention of what he was thinking when he made the introductions.

Third, Peskoff cites testimony by Kazel explaining the "industry custom" to pay finders a portion of the fees an investment adviser earns from managing the accounts of "clients" that the finder introduced. (Peskoff Answering Brief, p. 26, D.I. 63, 74.) Kazel never testified there was any custom to pay persons who introduced potential business partners such as Gen Advisors and Sentry Select.

Fourth, Peskoff relies on an alleged course of dealing regarding the FBR REIT transaction. He alleges that, regarding that transaction, FIDAC paid him "for the same type of services." (Peskoff Answering Brief, p. 26, D.I. 63, 74.) But that transaction is irrelevant here. For the FBR REIT, Peskoff provided services regarding FIDAC's ongoing management of a client's account. (A-265-A-266, A-269; Farrell, pp. 16-18, 29.) Peskoff never rendered any advice about any client's account for either the Premier or the MBS Trusts transactions. (A-85, A-107, A-108-A-109, A-147; Peskoff, pp. 44, 131-32, 137-38, 279; *see* FIDAC Answering Brief, pp. 7-9, 13-14, D.I. 66, 72.)

Even if Delaware law applies, and it does not, Peskoff's quantum meruit claim fails. To succeed on any such claim, Peskoff is required to show, among other things, that he made the

---

at that time (a year after he made the introductions), then presumably he would have so stated. (*See* FIDAC Answering Brief, pp. 10-11, D.I. 66, 72.)

- 7 -

introductions and listened to Farrell's complaints with an expectation that FIDAC would compensate him for such performance. He also must show that, at the time of performance, circumstances put FIDAC on notice of Peskoff's expectation. *Olsen v. T.A. Tyre General Contractor, Inc.*, 907 A.2d 295, 2006 Del. LEXIS 474, at *8 (Del. Aug. 24, 2006).

FIDAC's Answering Brief explains, in detail, why FIDAC was not on notice of any such expectation. (*See* FIDAC Answering Brief, pp. 24-27, D.I. 66, 72.)

## CONCLUSION

For the foregoing reasons and those set forth in the FIDAC Brief and the FIDAC Answering Brief, FIDAC respectfully requests that this Court grant its motion for summary judgment, dismissing all of Plaintiffs' claims.

Dated:  July 10, 2007                                              **EDWARDS ANGELL PALMER & DODGE LLP**

                                                                         */s/ John L. Reed*
                                                                         John L. Reed (I.D. No. 3023)
                                                                         Joseph B. Cicero (I.D. No. 4388)
                                                                         919 North Market Street, 15th Floor
                                                                         Wilmington, DE 19801
                                                                         302.777.7770 (Phone)
                                                                         302.777.7263 (Fax)
                                                                         jreed@eapdlaw.com
                                                                         jcicero@eapdlaw.com

                                                                                      - and -

                                                                         Gerald A. Novack (*pro hac vice*)
                                                                         Sarah P. Kenney (*pro hac vice*)
                                                                         **KIRKPATRICK & LOCKHART PRESTON**
                                                                         **GATES ELLIS LLP**
                                                                         599 Lexington Avenue
                                                                         New York, New York 10022
                                                                         212.536.3900 (Phone)
                                                                         212.536.3901 (Fax)

**CERTIFICATE OF SERVICE**

  I, Joseph B. Cicero, hereby certify that on July 10, 2007, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following and the document is available for viewing and downloading from CM/ECF:

    Joseph Grey, Esq.
    Stevens & Lee, P.C.
    1105 North Market Street, 7th Floor
    Wilmington, DE 19801

        **EDWARDS ANGELL PALMER & DODGE LLP**

        */s/ Joseph B. Cicero*
        John L. Reed (I.D. 3023)
        Joseph B. Cicero (I.D. 4388)
        919 N. Market Street, 15th Floor
        Wilmington, DE 19801
        302.777.7770
        302.777.7263
        jreed@eapdlaw.com
        jcicero@eapdlaw.com