ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNDERHILL INVESTMENT CORPORATION, *by and through Stephen D. Peskoff as successor in interest*, and STEPHEN D. PESKOFF, *individually*,<br><br>　　　　　Plaintiffs<br><br>　v.<br><br>FIXED INCOME DISCOUNT ADVISORY COMPANY,<br><br>　　　　　Defendant. | Civil Action No. 06-0099-SLR<br><br>**CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER FILED UNDER SEAL**<br><br>**This document is not to be opened or its contents displayed, copied, or revealed except by Court Order or by agreement of the parties to this action.** |

**REPLY BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

　　　　　　　　　　STEVENS & LEE, P.C.
　　　　　　　　　　Joseph Grey (DE Bar No. 2358)
　　　　　　　　　　G. Thompson Bell, III, *pro hac vice*
　　　　　　　　　　Todd J. Cook, *pro hac vice*
　　　　　　　　　　1105 North Market Street, Seventh Floor
　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　TEL: (302) 654-5180
　　　　　　　　　　FAX: (302) 654-5181
　　　　　　　　　　EMAIL: jg@stevenslee.com
　　　　　　　　　　　　　　gtb@stevenslee.com
　　　　　　　　　　　　　　tjc@stevenslee.com

　　　　OF COUNSEL:
　　　　　　　　　　RUBEN & ARONSON, LLP
　　　　　　　　　　Robert L. Ruben, *pro hac vice*
　　　　　　　　　　Marshall F. Berman, *pro hac vice*
　　　　　　　　　　4800 Montgomery Lane, Suite 150
　　　　　　　　　　Bethesda, MD 20814
　　　　　　　　　　TEL: (301) 951-9696
　　　　　　　　　　FAX: (301) 951-9636
　　　　　　　　　　EMAIL: rruben@randalaw.com
　　　　　　　　　　　　　　mberman@randalaw.com

　　　　　　　　　　*Attorneys for Plaintiffs Underhill Investment Corp.
　　　　　　　　　　and Stephen D. Peskoff*

Dated: July 10, 2007

SL1 735167v2/100409.00001

# TABLE OF CONTENTS

Page

I. NEW YORK'S STATUTE OF FRAUDS DOES NOT BAR PLAINTIFFS' CLAIMS..............2

II. THE UNDISPUTED FACTS ESTABLISH FIDAC'S LIABILITY TO PLAINTIFFS UNDER THE THEORIES OF QUANTUM MERUIT AND PROMISSORY ESTOPPEL..............3

III. THE EVIDENCE DOES NOT SUPPORT A GENUINE QUESTION OF FACT REGARDING FIDAC'S DEFENSE OF ACCORD & SATISFACTION..............6

IV. PESKOFF HAS STANDING TO BRING HIS PERSONAL CLAIMS AND UNDERHILL'S ASSIGNED CORPORATE CLAIMS..............8

V. FIDAC'S ALLEGATIONS OF MISSTATEMENTS ARE IMPROPER AND INCORRECT..............12

VI. CONCLUSION..............13

# TABLE OF AUTHORITIES

**CASES**

*Acierno v. Worthy Bros. Pipeline Corp.*,
   693 A.2d 1066 (Del. 1997) .................................................................................................. 6

*In re Alu*,
   302 A.D.2d 520, 755 N.Y.S.2d 238 (N.Y. App. Div. 2003) ............................................... 3

*Bellanca Corp. v. Bellanca*,
   169 A.2d 620 (Del. 1961) ................................................................................................ 4, 5

*Benetec Australia Ltd. v. Commw. Scientific and Indust. Research Org.*,
   2005 U.S. Dist. LEXIS 3545, No. 04-889 (D. Del. Mar. 8, 2005) ...................................... 6

*Central Trust Co, N.A. v. Anemostat Prods. Div.*,
   621 F.Supp. 44 (S.D. Ohio 1985) ................................................................................. 10, 11

*Cheeseman v. Grover*,
   490 A.2d 175 (Del. Super. 1984) ......................................................................................... 2

*Cummings v. Pinder*,
   574 A.2d 843 (Del. 1990) .................................................................................................... 6

*Freedman v. Pearlman*,
   271 A.D.2d 301, 706 N.Y.S.2d 405 (N.Y. App. Div. 2000) ............................................... 3

*Grandell Rehabilitation and Nursing Ctr. v. Serby*,
   21 A.D.3d 346, 800 N.Y.S.2d 188 (N.Y.S. App. 2005) ...................................................... 7

*Merrill Lynch Realty/Carll Burr, Inc. v. Skinner*,
   483 N.Y.S.2d 979 (N.Y. 1984) ............................................................................................ 7

**STATUTES, RULES & REGULATIONS**

FED. R. EVID. 408 ...................................................................................................................... 12

OHIO REV. CODE ANN. § 1701.88 ............................................................................................... 9

D. DEL. LOCAL RULE 7.1.3(c)(2) ................................................................................................ 2

DEL. CODE. ANN. TIT. 6, § 2714 ................................................................................................. 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNDERHILL INVESTMENT CORPORATION, *by and through Stephen D. Peskoff as successor in interest*, and STEPHEN D. PESKOFF, *individually*, <br><br> Plaintiffs <br><br> v. <br><br> FIXED INCOME DISCOUNT ADVISORY COMPANY, <br><br> Defendant. | Civil Action No. 06-0099-SLR |

## REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs Underhill Investment Corporation and Stephen D. Peskoff (collectively, "Peskoff" or "Plaintiffs") file this reply memorandum of law in response to Defendant Fixed Income Discount Advisory Company's ("FIDAC") answering brief [D.I. 66] and in support of Plaintiffs' motion for partial summary judgment as to liability on Counts I (quantum meruit) and II (promissory estoppel) of Plaintiffs' Amended Complaint. [D.I. 45].

In its answering brief, FIDAC attempts to demonstrate the existence of factual disputes precluding the entry of summary judgment for Plaintiffs. FIDAC's arguments in opposition to Plaintiffs' motion are incorrect. Specifically, as discussed in this brief:

> (i) New York's statute of frauds does not apply and, even if it did, it is satisfied on the undisputed facts in the record,
>
> (ii) FIDAC misapprehends and misapplies the law regarding Plaintiffs' quantum meruit and promissory estoppel claims on which Plaintiffs have proven entitlement to summary judgment on the issue of liability,

1

>  (iii) FIDAC has failed to present any evidence to support the necessary elements of its purported accord and satisfaction defense, and
>
>  (iv) the undisputed facts show Peskoff has standing to prosecute Underhill's claims because Underhill assigned the right to do so to Peskoff.

## I. NEW YORK'S STATUTE OF FRAUDS DOES NOT BAR PLAINTIFFS' CLAIMS

In its answering brief, FIDAC contends New York law governs Plaintiffs' claims and its statute of frauds bars Plaintiffs' quantum meruit and promissory estoppel claims. [D.I. 66 at 22-23]. FIDAC's argument is misplaced. For the reasons discussed at length in Plaintiffs' opening brief in support of their motion for partial summary judgment [D.I. 47 & 54 at 11-18][1] and answering brief in opposition to FIDAC's motion for summary judgment [D.I. 63 & 74 at 15-24], Delaware law governs Plaintiffs' claims and does not require finder's fee agreements to be reduced to a signed writing.[2] *See id.* at 21 (citing DEL. CODE. ANN. TIT. 6, § 2714; *Cheeseman v. Grover*, 490 A.2d 175, 177 (Del. Super. 1984)).

Moreover, for the reasons discussed at length in Plaintiffs' prior briefs, even if New York law applied, New York's relaxed statute of frauds applicable to quasi-contract finder's fee claims is satisfied on the instant facts. [*See* D.I. 47 & 54 at 22-24; D.I. 63 & 74 at 22-24; *see also* D.I. 64 & 75, Ex. 3 (Consulting Agreement ¶ 2 (stating in open-ended, forward-looking terms that FIDAC will pay Peskoff for his services)), Ex. 7 (acknowledging that Peskoff "provided the initial introduction[s] to the principals involved in [Premier's and the MBS

---

[1] Throughout this brief, when Plaintiffs cite two docket entries separated by an ampersand, Plaintiffs are referring to both the publicly filed and sealed versions of the same document. Thus, for example, here Plaintiffs cite pages 11-18 of both versions of their opening brief.

[2] Pursuant to the dictates of the Local Rules, Plaintiffs will not burden the Court with duplicative legal analysis already discussed at length in its prior opening and/or answering briefs [D.I. 47 & 63]. *See* Local Rule 7.1.3(c)(2). Rather, where Plaintiffs have already addressed the arguments raised in FIDAC's answering brief, Plaintiffs will simply incorporate their prior analysis and provide appropriate citations to their prior briefs.

Trusts'] formation" and that Farrell told Peskoff that FIDAC "would compensate [Peskoff] for [his] limited involvement in these products"), Ex. 10 at 1 **REDACTED** **REDACTED**. Accordingly, the Court should reject FIDAC's argument that New York's statute of frauds bars Plaintiffs' quasi-contract quantum meruit and promissory estoppel claims.

## II. THE UNDISPUTED FACTS ESTABLISH FIDAC'S LIABILITY TO PLAINTIFFS UNDER THE THEORIES OF QUANTUM MERUIT AND PROMISSORY ESTOPPEL

By conflating the distinct doctrines of quantum meruit and promissory estoppel, FIDAC contends Plaintiffs failed to make out either of these claims. Most significantly, FIDAC erroneously contends Plaintiffs are not entitled to summary judgment on their quantum meruit and promissory estoppel claims because Peskoff allegedly "cannot show that he took any action in reliance upon any promise by Farrell or anyone else at FIDAC." [D.I. 66 at 26]. However, "reliance" is not a required element of a quantum meruit claim under the law of Delaware (which the parties agreed would govern their relationship) or New York (which FIDAC now contends should govern). [*See* D.I. 63 at 20 n.2 (discussing elements of a quantum meruit claim under Delaware and New York law); D.I. 51 at 30 (citing *In re Alu*, 302 A.D.2d 520, 520, 755 N.Y.S.2d 238, 290 (N.Y. App. Div. 2003); *Freedman v. Pearlman*, 271 A.D.2d 301, 304, 706 N.Y.S.2d 405, 405 (N.Y. App. Div. 2000))]. Furthermore, their previous briefs fully discussed Plaintiffs' reliance in connection with their promissory estoppel claims. [D.I. 47 & 54; 63 & 74]. Thus, for the reasons discussed in Plaintiffs' prior briefs, FIDAC's reliance arguments should be rejected.

FIDAC's answering brief makes several discrete arguments in an attempt to show Peskoff did not expect to be compensated for his services or FIDAC was not on notice that

3

Peskoff expected to be compensated. But, FIDAC presents no <u>evidence</u> to contradict the fact Peskoff expected to be compensated for the Gen Advisors and Sentry Select transactions under the Consulting Agreement. Peskoff's undisputed deposition testimony established his expectation to be paid. [*E.g.*, D.I. 64 & 75, Ex. 2 at 95 (testifying that Peskoff reviewed the Consulting Agreement contemporaneous with the Baptista and Corsini introductions and believed "part of the general consulting contract that I had signed with Mike Farrell covered bringing in customers, just like I brought in FBR REIT, and that [with respect to the Baptista and Corsini introductions] I was covered under that agreement")]. Peskoff's notes from meetings during the relevant period confirm that Peskoff expected to be paid under the Consulting Agreement. [*See* Plaintiffs' Reply Appendix of Exhibits,[3] Ex. 1; D.I. 64 & 75, Exs. 11-12]. FIDAC presents no <u>evidence</u> to dispute the fact that Plaintiffs, under the Consulting Agreement and attendant circumstances, expected to be compensated for their services. FIDAC's factually unsupported arguments should be rejected.

      While most of FIDAC's arguments are sufficiently addressed in Plaintiffs' prior briefs [*see* D.I. 47 & 54; 63 & 74],

**REDACTED**

---

[3] Filed concurrently herewith.

**REDACTED**

---

[4] In fact, all redactions of "confidential" information in Plaintiffs' opening and answering briefs and supporting exhibits were made by counsel for FIDAC.

# REDACTED

## III. THE EVIDENCE DOES NOT SUPPORT A GENUINE QUESTION OF FACT REGARDING FIDAC'S DEFENSE OF ACCORD & SATISFACTION

FIDAC asserts that its defense of accord and satisfaction creates a genuine issue of fact for trial. However, FIDAC fails to address – and cannot prove – the elements of accord and satisfaction.

The proponent of a purported accord and satisfaction defense must prove that: (1) a bona fide dispute existed between the parties as to the amount of the debt, (2) the debtor tendered an amount to the creditor in honest belief that it would constitute satisfaction of the debt, and (3) the creditor accepted the payment. *Benetec Australia Ltd. v. Commw. Scientific and Indust. Research Org.*, 2005 U.S. Dist. LEXIS 3545, No. 04-889 (D. Del. Mar. 8, 2005) (citing *Acierno v. Worthy Bros. Pipeline Corp.*, 693 A.2d 1066, 1068-69 (Del. 1997)). The act of unilaterally deciding to pay a certain amount after the contract is performed is insufficient to establish the necessary dispute. *See Cummings v. Pinder*, 574 A.2d 843, 845 (Del. 1990) ("[T]he increased fee was imposed unilaterally and without discussion after services had been completed. Thus, there was not a bona fide dispute based on mutual good faith.").

FIDAC's arguments cannot create a jury question regarding its purported defense because FIDAC has failed to present any record evidence or testimony showing the existence of a dispute at the time of the December 2003 payment. [*See* D.I. 66 at 28]. Specifically, there is no evidence that Peskoff had made any demand or claimed entitlement to any specific sum that FIDAC disputed prior to making the payment. In fact, FIDAC dedicated an entire section of its opening brief to demonstrating that no dispute existed until after the December 2003 payment. [*See, e.g.*, D.I. 51 at 17-19 (section titled "No Pre-Litigation Claims by Peskoff to Any

6

Entitlement to Compensation")]. Moreover, FIDAC presents no record evidence showing that FIDAC made the $30,000 payment as <u>an offer to settle</u> any dispute. Accordingly, FIDAC's purported accord and satisfaction defense fails to raise a genuine issue for trial because the record is devoid of any evidence with which FIDAC could prove its defense at trial.

The outcome is the same under New York law, which also requires that the payment is made as an offer to settle a disputed claim. *See, e.g., Grandell Rehabilitation and Nursing Ctr. v. Serby*, 21 A.D.3d 346, 800 N.Y.S.2d 188 (N.Y.S. App. 2005). FIDAC's reliance on *Grandell* is further misplaced because, <u>even where a dispute exists and a payment is made for the purpose of settling the dispute</u>, mere acceptance of a check acts as an accord and satisfaction "only when the person receiving the check has been ***clearly informed*** that acceptance of the amount offered ***will settle or discharge a legitimately disputed unliquidated claim***." *Grandell*, 800 N.Y.S.2d at 189-90 (emphasis added) (citation omitted). Thus, the New York Court of Appeals has rejected an accord and satisfaction defense where "neither the check nor the letter accompanying it ***expressly stated that the check was offered in settlement of any outstanding dispute*** arising out of the contract" and the plaintiff was not ***clearly informed*** that acceptance of the check would discharge the plaintiffs' contract claim. *Merrill Lynch Realty/Carll Burr, Inc. v. Skinner*, 483 N.Y.S.2d 979, 982-83 (N.Y. 1984).

In addition to the absence of any evidence of a dispute, FIDAC has failed to present any record evidence showing that FIDAC ever ***clearly informed*** Plaintiffs that acceptance of the December 2003 payment would discharge any claims Peskoff otherwise had against FIDAC. In fact, in the absence of any clear statement by FIDAC as required to make out an accord and satisfaction defense, Peskoff did not believe cashing the check would have the

effect of discharging any claims he might have against FIDAC. [D.I. 52 at A-130-31 (Peskoff Dep. at 211) (testifying that Peskoff "didn't think he had to" endorse the check "under protest")].

Additionally, the December 2003 payment upon which FIDAC bases its defense had nothing to do with the Gen Advisors / Premier transaction. FIDAC's answering brief fails to advise the Court that Mike Farrell wrote on the payment stub attached to the check, **"For Canadian Deal – with Sentry Select. This is a one time finder's fee."** [ Plaintiffs' Reply Appendix of Exhibits, Ex. 2 (emphasis added)]. Furthermore, directly contrary to FIDAC's argument in its answering brief, Farrell acknowledged the payment related solely to the first of the four Sentry Select funds:

> Q: And there is a notation. First there's a typewritten notation that says consulting expense, and then under that there is a handwritten notation. Do you see that?
> A: Yes.
> Q: And that handwriting is yours; is that right?
> A: That's correct.
> Q: What you have written there says, for Canadian deal with Sentry Select. This is a one-time finder's fee. Is that right?
> A. That's correct.
> Q: So this payment has to do strictly with Sentry Select; correct?
> A: That's correct.
> Q: It has nothing to do with Premier?
> A: That is correct.
> Q: It was only for the first Sentry Select fund, the MBS fund?
> A: It's the only one that existed at the time, yes.
> Q: So the answer is yes?
> A: Yes.

[Plaintiffs' Reply Appendix of Exhibits, Ex. 3 (Farrell Dep. at 78)].

### IV. PESKOFF HAS STANDING TO BRING HIS PERSONAL CLAIMS AND UNDERHILL'S ASSIGNED CORPORATE CLAIMS

FIDAC contends that summary judgment is improper because genuine issues of fact allegedly exist regarding Underhill's standing to bring claims against FIDAC. Specifically, FIDAC asserted that a dissolved Ohio corporation, such as Underhill, is authorized only to do

8

such acts as are necessary to "wind up the affairs" of the corporation and that such acts, including filing and prosecuting a civil action, must be done "as speedily as practicable." [D.I. 66 at 31 (quoting Ohio Rev. Code Ann. § 1701.88(A) & (D))]. FIDAC contends genuine issues of fact allegedly exist regarding whether this action is part of the process of winding up Underhill's affairs.

FIDAC's standing argument is misplaced because the undisputed facts show Underhill assigned its claims to Peskoff, its sole shareholder, director and creditor, by and through whom Underhill brings its claims in the instant action. FIDAC contends Underhill assigned all of its assets to Peskoff, but that, "Peskoff admits, he never assigned any claims against FIDAC at that time." [D.I. 66 at 32 (citing Peskoff Dep. at 388)]. FIDAC's answering brief mischaracterizes the cited testimony in a self-serving attempt to negate the undisputed evidence that Peskoff intended to assign and instructed his accountants that any and all of Underhill's assets of any type or value should be assigned from Underhill to Peskoff.

Specifically, the undisputed evidence in the record demonstrates that, prior to the formal dissolution of Underhill, Peskoff instructed his accountants, Charles Cocke and John Devlin, to effect a complete assignment of any and all of Underhill's assets to Peskoff for purposes of preparing Peskoff's and Underhill's tax returns:

> What I asked my accountants to do is protect my total interests, *and anything and any possible thing that could be assigned from the corporation to me, whether . . . it was $2.00 of cash or real estate assets or whatever, be assigned accordingly.*

[Plaintiffs' Reply Appendix of Exhibits, Ex. 4 (Peskoff Dep. at 367) (emphasis added)]. Peskoff's deposition testimony is consistent with Cocke's and Devlin's testimony regarding Peskoff's intention for Underhill to assign all of its assets to Peskoff. [*See* Plaintiffs' Reply Appendix of Exhibits, Ex. 5 (Cocke Dep. at 43) (testifying that it "certainly" was Cocke's

9

"assumption that all the assets would have been distributed out in payment of the debt [to Peskoff]"); Plaintiffs' Reply Appendix of Exhibits, Ex. 6 (Devlin Dep. at 73) (testifying that Devlin understood that all of Underhill's assets were to be distributed to Peskoff, Underhill's sole shareholder)].

FIDAC mischaracterizes Peskoff's deposition testimony in an effort to assert Underhill never assigned to Peskoff the right to pursue its claims against FIDAC. [*See* D.I. 66 at 32 (citing Peskoff Dep. at 388)]. In the cited testimony, Peskoff explained that he was required to clean up Underhill's corporate books after discovering: "There was a lot of things that weren't done properly. I.e., you already saw one of them, which [the accountants] didn't assign an asset to me which they should have assigned." [Peskoff Dep. at 388]. In light of Peskoff's clear and undisputed intent and instruction that Underhill assign to him "anything and any possible thing that could be assigned," the only reasonable reading of the deposition testimony cited by FIDAC is that the accountants simply failed to formally record the assignment for purposes of preparing Peskoff's and Underhill's tax returns because they did not know of the claim, which was a non-cash asset at the time. [*See* Plaintiffs' Reply Appendix of Exhibits, Ex. 6 (Devlin Dep. at 70-73) (testifying that Underhill operated on cash basis and that non-cash assets, such as claims, are not reported on tax returns)]. When Peskoff discovered this fact, he took steps (as sole shareholder, director and creditor of Underhill) to formalize his prior intent and instruction to transfer all assets from Underhill to him. [*See* D.I. 67, Ex. 2 at B-18-20].

It is entirely proper for a sole shareholder and director (*i.e.*, the only person authorized to effect such an assignment) to formalize a past assignment or attempt to assign claims. *See Central Trust Co, N.A. v. Anemostat Prods. Div.*, 621 F.Supp. 44 (S.D. Ohio 1985). For example, in *Central Trust*, the plaintiff sued upon claims it contended Glenway Sheet Metal,

Inc. had assigned to it on December 31, 1982. Attacking the plaintiff's standing, the defendant argued the assignment "entitles plaintiff to only the proceeds of the claim, not the right to collect on the claim." *Id.* at 47. Recognizing a problem with the original assignment, the sole shareholder of the now-dissolved Glenway, on September 24, 1984, made a second assignment of the right to bring the claims retroactive to December 31, 1982. *Id.* In light of the second assignment, the court held "if defendant's contention is correct, and the original Assignment did not give plaintiff the right to recover on the claim, the second Assignment certainly did." *Id.* Moreover, because the complaint alleged the plaintiff was "the assignee of 'certain claims' of Glenway against defendant" there was no need to amend the complaint in light of the post-complaint assignment. *Id.*

Similarly, Plaintiffs alleged in the original complaint that Peskoff was the successor in interest to Underhill's claims. [D.I. 1 ¶ 5; *see also* D.I. 31 ¶¶ 9-10]. If Peskoff's stated pre-dissolution intention and instruction as sole shareholder, director and creditor of Underhill (and the only person authorized to effect such an assignment) to transfer to him any and all of Underhill's assets was somehow insufficient to confer upon Peskoff the right to prosecute Underhill's claims against FIDAC due to the failure of the accountants to formalize the same for tax purposes, then the December 6, 2006 assignment certainly cured such insufficiency. [*See* D.I. 67, Ex. 2 at B-18-20 ¶ 1 (assigning to Peskoff a security interest in Underhill's claims against FIDAC), ¶ 3 (authorizing Peskoff to prosecute, settle or compromise any and all claims in favor of the corporation)]. Indeed, Underhill brings its claims in the instant action "by and through Peskoff" as successor to those claims. Therefore, FIDAC's argument that Underhill lacks standing to bring this action is simply irrelevant.

## V. FIDAC'S ALLEGATIONS OF MISSTATEMENTS ARE IMPROPER AND INCORRECT

Plaintiffs must respond to two issues addressed by FIDAC in the introductory portions of its answering brief. First, FIDAC spends considerable time discussing alleged misstatements in Plaintiffs' September 2005 settlement letter. In fact, the settlement letter is irrelevant to Plaintiffs' claims. Moreover, FIDAC submitted Plaintiffs' settlement letter into evidence in violation of Federal Rule of Evidence 408. [*See* D.I. 53 & 55, Ex. 4 at A-30-34; *see also* D.I. 66 at 3 (quoting and mischaracterizing the settlement letter)]. Rule 408 prohibits the use of "conduct or statements made in compromise negotiations regarding the claim" when used to "impeach through a prior inconsistent statement or contradiction." FED. R. EVID. 408(a)(2). This is precisely the purpose for which FIDAC attempts to use the settlement letter.

Moreover, contrary to FIDAC's contention, the settlement letter does not misrepresent or mischaracterize the Consulting Agreement. The only error in the letter is obviously innocent (and has been corrected by Plaintiffs). At the time of the letter, Plaintiffs were operating under the mistaken belief that FIDAC paid a 10% fee for the FBR transaction, not a 20% fee. FIDAC's implied assertion that Plaintiffs attempted to mislead the Court by initially underestimating the value of their claim in the settlement letter is ridiculous and should be rejected.

Similarly, FIDAC contends that Plaintiffs made variance misstatements in their opening brief. [*See* D.I. 66 at 14]. However, what FIDAC classifies as "misstatements" is a matter of mere semantics: FIDAC dislikes Plaintiffs' word choices such as "transition," "obligation," "voluntary," "identical," "promise," and "client." However, in each of the cited examples, Plaintiffs clearly and accurately explained the facts upon which they based their

arguments. [*See* D.I. 47 & 54]. Clearly, there was no intent or effort to mislead the Court, and Plaintiffs' opening brief in fact is not misleading.

## VI. CONCLUSION

For the reasons discussed herein and those discussed more fully in Plaintiffs' opening brief [D.I. 47, 54], the Court should grant Plaintiffs' motion and issue an order entering summary judgment on the issue of liability on Counts I and II in favor of Plaintiffs and against Defendant, and awarding such other relief as the Court deems appropriate.

Respectfully submitted,

Dated: July 10, 2007

STEVENS & LEE, P.C.

By: _____
Joseph Grey (DE Bar No. 2358)
G. Thompson Bell, III, *pro hac vice*
Pa. Attorney I.D. No. 32649
Todd J. Cook, *pro hac vice*
Pa. Attorney I.D. No. 89041
1105 North Market Street, Seventh Floor
Wilmington, DE 19801
TEL: (302) 654-5180
FAX: (302) 654-5181
EMAIL: jg@stevenslee.com
          gtb@stevenslee.com
          tjc@stevenslee.com

OF COUNSEL:
RUBEN & ARONSON, LLP
   Robert L. Ruben, pro hac vice
   D.C. Attorney I.D. No. 414580
   Marshall F. Berman, pro hac vice
   D.C. Attorney I.D. No. 020743
   4800 Montgomery Lane, Suite 150
   Bethesda, MD 20814
   TEL: (301) 951-9696
   FAX: (301) 951-9636
   EMAIL: rruben@randalaw.com
             mberman@randalaw.com

*Attorneys for Plaintiffs Underhill Investment Corp. and Stephen D. Peskoff*

13

## CERTIFICATE OF SERVICE

I, Joseph Grey, hereby certify that on this 10th day of July, 2007, I caused true and correct copies of the foregoing Reply Brief In Support of Plaintiffs' Motion for Partial Summary Judgment to be served by first class United States mail, postage prepaid and addressed to Defendant's counsel as follows:

>John L. Reed, Esquire
>Denise Seastone Kraft, Esquire
>EDWARD'S ANGELL PALMER & DODGE LLP
>919 North Market Street, 15th Floor
>Wilmington, DE 19801
>BY HAND DELIVERY
>
>Gerald A. Novack, Esquire
>KIRKPATRICK & LOCKHART
>PRESTON GATES ELLIS LLP
>599 Lexington Avenue
>New York, New York 10022
>BY FEDERAL EXPRESS

_____
Joseph Grey