## ORIGINAL

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

UNDERHILL INVESTMENT        :
CORPORATION, *by and through*    :
*Stephen D. Peskoff as successor in*   :
*interest*, and STEPHEN D. PESKOFF,  :
*individually*,                    :    Civil Action No. 06-0099-SLR
          Plaintiffs        :
                       :    **CONFIDENTIAL INFORMATION**
    v.                  :    **SUBJECT TO PROTECTIVE ORDER**
                       :    **FILED UNDER SEAL**
FIXED INCOME DISCOUNT     :
ADVISORY COMPANY,         :
          Defendant.     :    **This document is not to be opened or its**
                       :    **contents displayed, copied, or revealed except**
                       :    **by Court Order or by agreement of the parties**
                       :    **to this action.**
                       :

### CERTIFICATE OF COUNSEL REGARDING EXHIBITS
### TO PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
### PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

I, Todd J. Cook hereby certify as follows:

1.    I am an associate with the law firm Stevens & Lee, P.C., counsel for the Plaintiffs

in this action. I have been admitted to practice in the United States District Court for the District

of Delaware *pro hac vice* in this action. I offer this Certificate in support of the Plaintiffs' reply

brief in support of Plaintiffs' Motion for Partial Summary Judgment, which is being filed

contemporaneously herewith.

2.    Attached to this Certificate are true and correct copies of the following

documents:

*[Table begins on following page.]*

| ITEM | EXHIBIT |
|------|---------|
| Stephen D. Peskoff's notes dated July 24, 2003 and April 19, 2005 regarding payment under Consulting Agreement | 1 |
| Copies of FIDAC's December 2003 payment to Plaintiffs in connection with Sentry Select / MBS Trust I transaction | 2 |
| Excerpts of Deposition of Michael A.J. Farrell, December 15, 2006 | 3 |
| Excerpts of Depositions of Stephen D. Peskoff, October 10, 2006, and December 12, 2006 | 4 |
| Excerpts of Deposition of Charles P. Cocke, August 10, 2006 | 5 |
| Excerpts of Deposition of John P. Devlin, August 16, 2006 | 6 |

Todd J. Cook

STEVENS & LEE, P.C.

By: _____
Joseph Grey (DE Bar No. 2358)
G. Thompson Bell, III, *pro hac vice*
Pa. Attorney I.D. No. 32649
Todd J. Cook, *pro hac vice*
Pa. Attorney I.D. No. 89041
1105 North Market Street
Seventh Floor
Wilmington, DE 19801
TEL: (302) 654-5180
FAX: (302) 654-5181
EMAIL: jg@stevenslee.com
    gtb@stevenslee.com
    tjc@stevenslee.com

OF COUNSEL:

RUBEN & ARONSON, LLP

    Robert L. Ruben, *pro hac vice*
    D.C. Attorney I.D. No. 414580
    Marshall F. Berman, *pro hac vice*
    D.C. Attorney I.D. No. 020743
    4800 Montgomery Lane, Suite 150
    Bethesda, MD 20814
    TEL: (301) 951-9696
    FAX: (301) 951-9636
    EMAIL: rruben@randalaw.com
       mberman@randalaw.com

*Attorneys for Plaintiffs Underhill Investment Corp.*
*and Stephen D. Peskoff*

3

# EXHIBIT
# 1

SDP Thoughts on Mike Farrell
July 24, 2003

- SDP will have meeting with Ernie Baptista to discuss Mike Farrell situation
  - They will discuss the highs and lows of Gencorp deal
    - Take the high or low end amount raised and SDP will calculate his 20% of Mike's management fee
    - SDP is willing to pick up half of what Mike has spent on putting deal together (i.e. $500,000 total on Mike's end) – he'll take his fee and give it back to Mike to cover costs

- SDP needs to get a complete understanding of what his fees will entail in contract with FIDAC

P - 131

**UPDATE**
**4/19/05**

**Ernie Baptista/FIDAC-Annaly**

- E. Baptista feels that Mike Farrell forgot that he had a contract with SDP that has not yet been terminated
  - And that the board of directors are unaware of the contract
- He suggests SDP wait a few weeks and then sit down with him face to face *outside* the office
  **REDACTED**
  - E. Baptista suggests that SDP inform Farrell of the offer he made to pay the $600K in expenses; Have Farrell take that off the top (of whatever is owed to SDP) and then SDP to get paid after that.

*P - 148*

# EXHIBIT
# 2

ED INCOME DISCOUNT ADVISORY COMPANY

Consulting Expense                                                    30,000.00

for Canadian
Deal —
was Susay Salet
This is a one time
finder's fee

12/22/03     0245     Underhill Investments                    $30,000.00

---

**FIXED INCOME DISCOUNT ADVISORY COMPANY**
1211 AVENUE OF THE AMERICAS
SUITE 2902
NEW YORK, NY 10036

CHARLES SCHWAB
PNC BANK, N.A.
PITTSBURGH, PA
3-5/310

0245

| | CHECK NO. | DATE | AMOUNT |
|---|---|---|---|
| | 0245 | Dec 22, 2003 | ***$30,000.00 |

Memo:

PAY
TO THE
ORDER
OF:

Thirty Thousand and 00/100 Dollars

Underhill Investments
1660 International Drive
Suite 400
McClean, VA  22102

AUTHORIZED SIGNATURE

β SECURITY FEATURES INCLUDED. DETAILS ON BACK. β

**REDACTED**

F 00175

APR-12-2005  System - Check Printing Window                    Page 2 of 2

4/12/2005 0:53 PM

FIXED INCOME DISCOUNT ADVISORY COMPANY                CHARLES SCHWAB         0245
1211 AVENUE OF THE AMERICAS                           PNC BANK, N.A.
SUITE 2903                                            PITTSBURGH, PA
NEW YORK, NY 10036                                    34318

                              CHECK NO.      DATE              AMOUNT
                                0245       Dec 22, 2003      ***$30,000.00

        Memo:
   PAY  Thirty Thousand and 00/100 Dollars
   TO THE
   ORDER Underhill Investments
   OF    1660 International Drive
         Suite 400
         McLean, VA 22102

                                                    AUTHORIZED SIGNATURE

**REDACTED**

For Deposit only

PROCESSED
B-S

3706846685

| | Account | Serial | Sequence | Paid Date | Amount |
|---|---------|--------|----------|-----------|--------|
| REDACTED | 245 | 0029259338 | 12/31/2003 | $30,000.00 |

Page 2 of 2

F 00176

http://intraweb.ibts.pfpc.net/CheckImage/pfpc/cis/printAdHocChecks.cis

TOTAL P.02

0245

| CLIENT NO. | DISTRIBUTION | INVOICE DATE | INVOICE AMOUNT | DISCOUNT TAKEN | AMOUNT PAID |
|---|---|---|---|---|---|
| | Consulting Expense | | | | 30,000.00 |

| CHECK DATE | CHECK NO. | PAYEE | DISCOUNTS TAKEN | CHECK AMOUNT |
|---|---|---|---|---|
| 12/22/03 | 0245 | Underhill Investments | | $30,000.00 |

AVLA20 ACCOUNTS PAYABLE CHECK (9/95)

EDNC21 (10/02) 18375

F 00177

# EXHIBIT
# 3

09:32a

1          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF DELAWARE

2

3  UNDERHILL INVESTMENT       :  Civil Action
   CORPORATION, by and through :  NO. 06-0099-SLR
4  Stephen D. Peskoff as      :
   successor in interest, and  :
5  STEPHEN D. PESKOFF,       :
   individually,            :
6              Plaintiffs  :
                        :
7        vs.            :
                        :
8  FIXED INCOME DISCOUNT      :
   ADVISORY COMPANY,         :
9              Defendant  :

10

11               ————————

12             Oral Deposition of
             MICHAEL A.J. FARRELL

13

14               ————————

15

16      Date:   Friday, December 15, 2006

17      Time:   9:33 a.m.

18      Place:  Stevens & Lee, P.C.
              1818 Market Street
19           29th Floor
              Philadelphia, PA  19103

20

21               ————————

22

23     COMPUTERIZED REPORTING SERVICES, INC.
        By:  Roxanne Weaver, RPR, CRR
24          3449 Penn Avenue
       Sinking Spring, PA  19608
25

       Phone:  (610) 678-6652  ORIGINAL

1

12:00p

1       Q      Now, the bottom part of the first page of

2   this exhibit appears to be a check stub; is that right?

3       A      Yes.

4       Q      And there is a notation.  First there's a

5   typewritten notation that says consulting expense, and

6   then under that there is a handwritten notation.  Do you

7   see that?

8       A      Yes.

9       Q      And that handwriting is yours; is that right?

10      A      That's correct.

11      Q      What you have written there says, for

12  Canadian deal with Sentry Select.  This is a one-time

13  finder's fee.  Is that right?

14      A      That's correct.

15      Q      So this payment had to do strictly with

16  Sentry Select; correct?

17      A      That's correct.

18      Q      It had nothing to do with Premier?

19      A      That is correct.

20      Q      It was only for the first Sentry Select fund,

21  the MBS fund?

22      A      It's the only one that existed at the time,

23  yes.

24      Q      So the answer is yes?

25      A      Yes.

# EXHIBIT
# 4

359

1

2  IN THE UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF DELAWARE

3  ---------------------------------------x

4  UNDERHILL INVESTMENT
   CORPORATION, by and through

5  Stephen D. Peskoff as successor in
   interest, and STEPHEN D. PESKOFF,

6  individually,

                    Plaintiffs,    Civil Action No.

7       -against-                    06-99-SLR

8  FIXED INCOME DISCOUNT
   ADVISORY COMPANY,

9                 Defendant.

10 ---------------------------------------x

11                 December 12, 2006
                   3:39 p.m.

12

13

14          CONTINUED DEPOSITION of

15 STEPHEN D. PESKOFF, taken by Defendant, pursuant

16 to Subpoena, at the law offices of Kirkpatrick &

17 Lockhart Nicholson Graham LLP, 599 Lexington

18 Avenue, New York, New York, 10022-6030, before

19 Eleanor Greenhouse, a Shorthand Reporter and

20 Notary Public within and for the State of New

21 York.

22

23

24          GREENHOUSE REPORTING, INC.
         363 Seventh Avenue - 20th Floor

25          New York, New York  10001

367

1                          S. Peskoff

2        A.    No.   What I said was at the time the

3    decision was made to dissolve the company, there

4    were no claims of action against anybody, and

5    what I asked my accountants to do is protect my

6    total interests, and anything and any possible

7    thing that could be assigned from the corporation

8    to me, whether we -- it was $2.00 of cash or real

9    estate assets or whatever, be assigned

10   accordingly.   Upon checking it, you asked me,

11   between the first and second -- and the first

12   deposition after, we found that they hadn't done

13   their work to the satisfaction, and they -- we

14   amended -- we amended it to include, you know,

15   the lawsuit as well as whatever other assets were

16   included in the amendment.

17       Q.    You said at the time the decision

18   was made to dissolve, there was no claim against

19   anybody.   Is that right?

20       A.    That is correct.

21       Q.    When did you first come to believe

22   there was a claim that Underhill had against

23   FIDAC?

24       A.    Well, when we actually filed the

25   lawsuit.

Greenhouse Reporting, Inc.                    (212)279-5108

# EXHIBIT
# 5

Charles Cocke.txt

```
0001
 1                    UNITED STATES DISTRICT COURT
 2                       DISTRICT OF DELAWARE
 3    UNDERHILL INVESTMENT CORPORATION )
 4    and STEPHEN D. PESKOFF,          )
 5                      Plaintiffs,    )
 6               v.                    ) No. 06-99-SLR
 7    FIXED INCOME DISCOUNT ADVISORY   )
 8    COMPANY,                         )
 9                      Defendant.     )
10
11                       Washington, D.C.
12                       Thursday, August 10, 2006
13    Deposition of CHARLES P. COCKE, called for
14    examination by counsel for Defendant in the
15    above-entitled matter, the witness being duly sworn
16    by CHERYL A. LORD, a Notary Public in and for the
17    District of Columbia, taken at the offices of
18    KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP, 1601 K
19    Street, N.W., Washington, D.C., at 11:03 a.m., and
20    the proceedings being taken down by Stenotype by
21    CHERYL A. LORD, RPR, CRR.
22
0002
 1    APPEARANCES:
 2
 3    On behalf of Plaintiffs:
 4         ROBERT L. RUBEN, ESQ.
 5         RUBEN & ARONSON LLP
 6         4800 Montgomery Lane, Suite 150
 7         Bethesda, MD  20814
 8         (301) 951-9696
 9
10    On behalf of Defendant:
11         GERALD A. NOVACK, ESQ.
12         SARAH P. KENNEY, ESQ.
13         KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
14         599 Lexington Avenue
15         New York, NY  10022-6030
16         (212) 536-3900
17
18
19
20
21
22
0003
 1                    C O N T E N T S
 2    WITNESS                         EXAMINATION
 3                                      PAGE NO.
 4    CHARLES P. COCKE
 5         By Mr. Novack                   4
 6         By Mr. Ruben                   84
 7         By Mr. Novack                  84
 8
 9                    E X H I B I T S
10         (Exhibits retained by counsel.)
11    COCKE EXHIBIT NO.                  PAGE NO.
12    EXHIBIT NO. 1                          8
13    EXHIBIT NO. 2                         13
14    EXHIBIT NO. 3                         14
15    EXHIBIT NO. 4                         29
16    EXHIBIT NO. 5                         48
                                       Page 1
```

Charles Cocke.txt

2  Mr. Peskoff?
3       A.    I had no such conversation.
4       Q.    In subdivision B of Roman numeral 1 on
5  this exhibit, you state:  Underhill would repay debt
6  and have no liquidating dividend.
7            Does that refresh your recollection at all
8  as to what you understood the value was of
9  Underhill's assets at the time and whether there was
10 going to be any distribution to the shareholder,
11 Mr. Peskoff?
12      A.    The purpose of this liquidation was that
13 there was no -- there were insufficient assets to pay
14 the debt.
15            So therefore -- and therefore, no
16 distributions to a shareholder as a shareholder.
17      Q.    Did you have any information as of the
18 time you wrote this memo, which is part of Cocke
19 exhibit 4, as to what assets would be used to
20 partially repay the debt owed by Underhill to
21 Mr. Peskoff?
22      A.    I have no memory of discussion of
0043
1  particular assets, no.
2       Q.    Do you have any general memory whatsoever
3  beyond the fact that there was a partnership interest
4  that you previously referred to?
5       A.    No.
6       Q.    Do you recall that there was going to be
7  an assignment to Mr. Peskoff of the partnership
8  interest in PB Partners?
9       A.    Could you repeat the question.
10            MR. NOVACK:  Could you read it back,
11 please.
12            (The reporter read the last
13            question.)
14      A.    I don't remember the discussion.
15            It certainly was an assumption that all
16 the assets would have been distributed out in payment
17 of the debt.
18            BY MR. NOVACK:
19      Q.    Well, going back to Cocke exhibit 3, your
20 handwritten notes, you make a reference to PB
21 Partners owned by Underhill with a fair market value
22 of 600,000 dollars.
0044
1            Does that refresh your recollection that
2  you understood at the time that there would be some
3  assignment of that partnership interest to
4  Mr. Peskoff in partial satisfaction of the 6
5  million-dollar debt?
6       A.    That certainly would have been my
7  understanding.
8            I don't remember the discussion.
9       Q.    Were there any other assets that you were
10 aware of at the time in May of 2004 that could be
11 used to repay part of this 6 million-dollar debt owed
12 by Underhill to Mr. Peskoff?
13      A.    No.
14      Q.    Did Mr. Peskoff say to you in any of your
15 conversations with him in May 2004 that he had any
16 contract claims or -- rather -- excuse me -- in your
17 conversations with Mr. Peskoff in May 2004, did he
18 indicate to you in any way that he believed that
                                        Page 16

# EXHIBIT
# 6

Deposition Transcript John Devlin.txt

0001
1           IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF DELAWARE
2      - - - - - - - - - - - - - - - -X
3    UNDERHILL INVESTMENT,                :
4    CORPORATION and STEPHEN D.           :
5    PESKOFF,                             :
6               Plaintiffs,               :
7          v.                             :    Civil Action No.
8    FIXED INCOME DISCOUNT                :    06-99-SLR
9    ADVISORY COMPANY,                    :
10              Defendant.                :
11     - - - - - - - - - - - - - - - -X
                         Washington, D.C.
12                       Wednesday, August 16, 2006
13          Deposition of JOHN P. DEVLIN, a witness
14   herein, called for examination by counsel for the
15   Defendant in the above-entitled matter, pursuant to
16   subpoena, the witness being duly sworn by PENNY M.
17   DEAN, a Notary Public in and for the District of
18   Columbia, taken at the offices of Kirkpatrick &
19   Lockhart, 1601 16th Street, Washington, D.C., at
20   12:15 p.m., Wednesday, August 16, 2006, and the
21   proceedings being taken down by Stenotype by PENNY M.
22   DEAN, RPR, and transcribed under her direction.
0002
1    APPEARANCES:
2
3         On behalf of the Plaintiffs:
4               MARSHALL F. BERMAN, ESQ.
5               Law Offices Ruben & Aronson, LLP
6               4800 Montgomery Lane, Suite 150
7               Bethesda, MD  20814
8               (301) 951-9636
9
10        On behalf of the Defendant:
11              GERALD A. NOVACK, ESQ.
12              SARAH P. KENNEY, ESQ.
13              Kirkpatrick & Lockhart Nicholson
14              Graham, LLP
15              599 Lexington Avenue
16              New York, NY  10022-6030
17              (212) 536-3900
18
19
20
21
22
0003
1                    C O N T E N T S
2    WITNESS          EXAMINATION BY COUNSEL FOR
3    JOHN P. DEVLIN        PLAINTIFFS      DEFENDANT
4     By Mr. Novack                          4, 74
5     By Mr. Berman         70, 87
6
7
8                    E X H I B I T S
9    DEVLIN EXHIBIT NO.                   PAGE NO.
10   No. 1  Subpoena served on Devlin        4
11   No. 2  Letter, 1/3/05 Peskoff to Knoll  55
12   No. 3  8/23/04 letter, Peskoff to
13          O'Reilly, Devlin                  56
14   No. 4  Partial subpoena, with handwritten
                              Page 1

```
                        Deposition Transcript John Devlin.txt
 9    profits in the corporation.  Accumulated earnings and
10    profits is a different concept than net operating
11    loss.
12         Q.     You're telling me then that a corporation
13    can pay a dividend to a shareholder and that
14    shareholder does not have a taxable event or taxable
15    reporting event on his individual income tax return?
16         A.     If a sharehold -- they won't issue a 1099
17    for that.  You will typically see, typically you will
18    see this where they'll report it as -- they may --
19    you know, you will see it occasionally where you have
20    REITS --
21         Q.     R-E-I-T-S.
22         A.     Right, real estate investment trusts, when
0070
 1    they issue a first -- they will come back and they
 2    will show it as a return of capital on a corrected
 3    1099, but no, it won't get reported, there is no
 4    place to report it on there, on the tax return.
 5         MR. NOVACK:  I think I may be done at this
 6    time with two exceptions.  One I have to check with
 7    Ms. Kenney, who is the left half of my brain.  And
 8    the other is I reserve the right to call you back if
 9    it is needed when I see the work papers we have
10    produced.  I'm not asking you to agree to come back
11    or not, but I am just noting that I reserve.
12         The left half of my brain tells me that I
13    have nothing more to ask you now, so that's it.
14         EXAMINATION BY COUNSEL FOR PLAINTIFFS
15         BY MR. BERMAN:
16         Q.     I would just like to ask a couple of
17    follow-up questions here to make sure we all
18    understand what transpired during some of the prior
19    exchange.
20         Is or was Underhill on a cash or accrual
21    basis?
22         A.     It was a cash basis, corporate.
0071
 1         Q.     So that on a cash basis would there be any
 2    record in their tax returns of a claim against
 3    somebody else?
 4         A.     No.
 5         Q.     When you wound down or were winding down
 6    the affairs of Underhill, did you follow Generally
 7    Accepted Accounting Principles?
 8         A.     Yes.
 9         Q.     And did the absence of any notation on the
10    tax returns with respect to the FIDAC matter comport
11    with the GAAP?
12         MR. NOVACK:  I'm going to object to the
13    form, you can answer the question.
14         MR. BERMAN:  Noted.
15         THE WITNESS:  Did the -- was the tax
16    return prepared correctly, is that what you're
17    asking?
18         MR. BERMAN:  Um-hum.
19         THE WITNESS:  Yes.
20         BY MR. BERMAN:
21         Q.     After explaining to us that -- counsel for
22    FIDAC, after explaining to us in his questions he was
0072
 1    not distinguishing cash assets from accrual assets,
 2    he asked you, did you have a duty to collect all the
```

Deposition Transcript John Devlin.txt

3  assets, and you answered yes.
4        Now, let's try the other -- that's under
5  his definition of assets.
6        MR. NOVACK:  I'm going to object to the
7  prefatory aspect of the questioning as to the form of
8  it once again.  I don't mind the question, it is just
9  the speech part that I'm objecting to.  I'm sure I
10 won't have an objection to your question ultimately,
11 when I hear it.
12       BY MR. BERMAN:
13       Q.   Assuming a cash basis at Underhill, did
14 you have a duty to collect non-cash assets, like
15 claims for example?
16       A.   Again, the term collection, what I'm doing
17 is taking the cash assets and accounting for them in
18 the proper way.  So I'm really not collecting assets,
19 I'm, you know, as assets, you know, as money comes in
20 and out of the company in any -- if there is any
21 non-cash items, the typical non-cash items would be
22 like depreciation on some fixed assets.  But I mean
0073
1  I'm not collecting -- it isn't my duty to go out and
2  look for any assets or claims that are outside, you
3  know, the cash assets.
4        I mean, they are -- as we spoke earlier
5  there could be all kinds of potential receivables or
6  things that may be due Underhill.  If they are not
7  collected, they are not cash and they are not
8  reported on the tax return.
9        Q.   You told us earlier that you attended a
10 meeting I believe in the spring of 2004 at which you
11 were told that Underhill was to be liquidated.
12       A.   Um-hum.
13       Q.   Did you leave that meeting with an
14 understanding of what was to become of any assets?
15       A.   Yes.
16       Q.   What was your understanding?
17       A.   They were to be distributed to the sole
18 shareholder.
19       Q.   And the sole shareholder was?
20       A.   Mr. Peskoff.
21       MR. BERMAN:  Thank you, that's all I have.
22       MR. NOVACK:  I have a few.
0074
1  FURTHER EXAMINATION BY COUNSEL FOR DEFENDANT
2        BY MR. NOVACK:
3        Q.   Let's go to the meeting.  Where did the
4  meeting take place you just testified to?
5        A.   I think -- I'm just trying to think where
6  Steve's office was at that point.
7        Q.   You can just tell me at Steve's office.
8        A.   In his office.
9        Q.   Who was present?
10       A.   It was Steve and Charles Cocke and I.
11       Q.   How long did it last?
12       A.   Hour -- I mean, it wasn't long, it wasn't
13 short.  Maybe 45 minutes to an hour, half hour.
14 There was a lot of discussion.  I mean about not only
15 Underhill, but Steve, you know.
16       Q.   This was in May 2004 to the best of your
17 recollection?
18       A.   Yeah.
19       Q.   Is there any reason why you can place it
                        Page 27

## CERTIFICATE OF SERVICE

I, Joseph Grey, hereby certify that on this 10th day of July, 2007, I caused true

and correct copies of the foregoing Certificate of Counsel to be served by first class United

States mail, postage prepaid and addressed to Defendant's counsel as follows:

John L. Reed, Esquire
Denise Seastone Kraft, Esquire
EDWARD'S ANGELL PALMER & DODGE LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

Gerald A. Novack, Esquire
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
599 Lexington Avenue
New York, New York 10022

Joseph Grey